**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Ricky DILLON, Defendant-Appellant.**

**No. 79CA0922.**

Colorado Court of Appeals, Div. III.

May 14, 1981.

As Modified on Denial of Rehearing June 11, 1981.

Certiorari Denied Aug. 31, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sp. Asst. Atty. Gen., R. Michael Mullins, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Nicholas R. Massaro, Jr., Deputy State Public Defender, Grand Junction, for defendant-appellant.

BERMAN, Judge.

Defendant appeals his jury-trial convictions of first degree murder, second degree burglary, conspiracy to commit second degree burglary, aggravated robbery, and conspiracy to commit robbery. We affirm.

Evidence adduced at trial shows that on the evening of August 13, 1977, Raul Jennings, Harold Evans, and Philip Brown gathered at Jennings' apartment and, while there, discussed breaking into a moving van which was parked outside. Brown claimed to know someone who would be willing to perpetrate the entry, and left to get him. A short time later, Brown returned to the Jennings apartment accompanied by defendant and Erich Kendal.

Defendant and Evans went to Evans' car to get a jack with which to pry open the doors of the van. Defendant, Brown, Kendal, and Evans then went to the van. The rear door was open; consequently, the jack was not needed to gain entry. Defendant entered and passed a box from the van to Evans, which box was placed in the trunk of Evans' car. Defendant then passed another box out, but a movement inside the van caused Kendal to drop the box. Everyone scattered and met shortly thereafter at the Jennings apartment. There, defendant told the group that the noise came from someone sleeping inside the van.

The four who had previously gone to the van then returned there. Defendant once again entered the van. Wielding the jack, he struck the occupant, who was one of the van's drivers, two or three times. At that time, Jennings, who had remained behind, heard moaning.

Some time after midnight, the van's other driver found the victim and saw that he was bleeding from the head. An ambulance was summoned, but the victim apparently was dead by the time it arrived, and efforts to revive him proved futile.

According to the coroner, the principal cause of death was massive abdominal bleeding resulting from a traumatically induced rupture of the victim's liver. The victim also suffered deep scalp lacerations, a skull fracture, and a broken neck. The coroner placed the time of death between 12 a. m. and 1 a. m. on the morning of August 14, 1977. He identified the car jack as an instrument with which the victim's injuries could have been inflicted.

Defendant's co-participants, all of whom admitted to negotiating pleas in exchange for their testimony, were principal witnesses against defendant at trial.

I.

On appeal, defendant argues first that the trial court abused its discretion in denying a defense motion for continuance. We disagree.

The motion in question was argued on Friday, June 16, 1978, and the trial itself began the following Monday. Defense counsel premised his request for a continuance, which request was renewed during trial, on (1) his lack of opportunity to interview key witnesses for the People, *viz.*, Kendal, Philip Brown, and Evans, and (2) his need for time to subpoena an assertedly key defense witness, Martee Brown.

Defendant asserts that the lack of opportunity to interview Philip Brown and Evans was attributable to their respective lawyers' having instructed them not to talk to his counsel. Defendant states that just before trial, and as a result of plea negotiations with the prosecution, Philip Brown and Evans abandoned their insistence on remaining silent and agreed to testify as witnesses for the People. Although his argument is not entirely clear, defendant appears to conclude that such agreements to testify would likely have induced Philip Brown and Evans' respective lawyers to advise Brown and Evans that they were free to talk to defendant's counsel.

Such a conclusion, though, does not necessarily follow. At no time did Philip Brown and Evans come under any legal compulsion to submit to extra-judicial interview by defendant's counsel. Indeed, their respective lawyers might very well have maintained the position that their clients should continue to refrain from talking to defendant's counsel, plea bargains notwithstanding. Under such circumstances, whether a continuance would have enabled defendant's counsel to secure interviews with Philip Brown and Evans is a matter of mere speculation.

Defendant claims that the lack of opportunity to interview Kendal and Martee Brown was owing to their absence from the state prior to trial. However, defendant does not contend that his counsel was, during the period leading to trial, unaware of Kendal and Martee Brown's connection with this case. Nor is it contended that defense counsel attempted to subpoena either of them before trial. Instead, it is argued that Kendal and Martee Brown ac-

quired pivotal significance as witnesses only just before trial. Defendant claims that Kendal became significant as a witness by virtue of his late agreement to testify for the People. And, it is claimed that Martee Brown became important as a witness only because his testimony was needed to rebut that of Philip Brown. In that regard, defendant insists that Philip Brown's earlier testimony before the grand jury tended to *exonerate* defendant and therefore would not have required rebuttal. But, it is claimed, just before trial Philip Brown agreed to testify for the prosecution, presumably in a way that would *inculpate* defendant. That late change of circumstances, it is argued, rendered Martee Brown's ostensible rebuttal testimony necessary only just prior to trial.

■ The grant or denial of a continuance is within the sound discretion of the trial court and will not be overturned on appeal unless the record reflects a clear abuse of that discretion. *Miller v. People,* 178 Colo. 397, 497 P.2d 992 (1972). An appellate court, in reviewing such a decision, must consider the totality of the circumstances surrounding the request for a continuance. *Miller, supra.*

Here, as to defense counsel's asserted lack of opportunity to interview Philip Brown and Evans, defendant has failed to demonstrate any prejudice to his cause, for it has not been shown that a continuance would have enabled such interviews. *Cf. People v. Fletcher,* 193 Colo. 314, 566 P.2d 345 (1977).

As to the witnesses who were absent from the state, defendant has not shown that any attempt was made before trial to subpoena them. In a criminal case involving co-participants, there is always a possibility that one or more of them may become available as witnesses against the defendant. Such a prospect was reasonably foreseeable in the case at bar. Given the *potential* need for the witnesses here in question, the time which was available to secure their attendance at trial, and defendant's election not to subpoena them before trial, defendant is not in a position now to complain of failure to grant his continuance on the stated ground. Furthermore, nothing in the record suggests that the People deliberately delayed plea negotiations for the purpose of impeding defense counsel's trial preparation. Under these circumstances, the trial court acted within its discretion in denying defendant's request for a continuance just before trial was to begin. *Miller, supra.*

## II.

Defendant next contends that the trial court erred in admitting into evidence six gruesome photographs of the decedent. It is claimed that they had little or no probative value and were highly inflammatory and prejudicial. We note at the outset, however, that the admission of only two of the photographs was assigned as error in defendant's motion for new trial.

■ We have examined the four photographs which were not cited in the new trial motion and do not perceive their admission to have amounted to plain error. *See generally People v. White,* Colo., 606 P.2d 847 (1980). Consequently, their admission may not be further considered on appeal. Crim.P. 33(a); Crim.P. 52(b); *see generally People v. Barker,* 180 Colo. 28, 501 P.2d 1041 (1972).

■ The two photographs whose admission is preserved for consideration on appeal show a frontal view of the decedent's head, shoulders, and upper chest. The head is shown resting upon a blood-soaked towel. The photos also depict, *inter alia,* a tube, with one end inserted into the decedent's mouth and the other end attached to a syringe resting against his neck. Another tube is shown attached to the chest. White adhesive tape covers most of the decedent's right upper chest and neck. According to the medical testimony, the mentioned items were applied in the hospital emergency room in a routine attempt to resuscitate the victim. The right side of the decedent's face displays some dried blood and is marked by superficial wounds. Both photographs measure eight-by-ten inches, with the main difference being that one is in color, the other black and white.

"The admissibility of photographs into evidence in a homicide prosecution is a matter within the discretion of the trial judge, who must weigh their probative value against their potential inflammatory effect on the jury. [citations omitted] Such photographs have probative value when they are offered to show [, *inter alia*, the victim's] identity." *White, supra.*

The two photographs here in question were, at the very least, probative with respect to the identity of the victim, for they were the only ones admitted which showed his face. Indeed, the coroner was handed the photographs while he was delivering his testimony and used them to identify the person as to whose cause of death he was testifying.

"When ... photographs are determined to have probative value, the trial judge's task is to determine whether their potential inflammatory effect 'far outweighs' that value. [citations omitted] The trial judge's determination will not be disturbed on review absent an abuse of discretion." *White, supra.* As in *White,* "[t]he record in the case before us supports the conclusion that the trial judge applied the proper balancing test, and we find no abuse of discretion on his part." Accordingly, we reject defendant's second contention.

### III.

■ Defendant argues lastly that the trial court committed plain error in neglecting to instruct the jury on accomplice testimony. We disagree.

No accomplice testimony instruction was tendered at trial. Nor was any objection there raised to the failure to give such an instruction.

"It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *see also* Crim.P. 30; Crim.P. 52(b). "Unless there is a reasonable possibility that the improper instruction contributed to the defendant's conviction, reversal is not required." *Barker, supra.*

Furthermore, "[a]n *omission* [as here] is less likely to be prejudicial than a *misstatement* of the law." *Henderson, supra* (emphasis added). The rule in Colorado accords with *Henderson. See Rowan v. People,* 93 Colo. 473, 26 P.2d 1066 (1933). In dealing with an argument analogous to that raised here, the Court in *Rowan* stated:

"It is complained that the [trial] court did not of its own motion instruct the jury to disregard the gun and all evidence in connection therewith. The record shows that no instructions were asked in behalf of defendant, and objections were made to none given. 'We have ruled many times,' said the court in *West v. People,* 60 Colo. 488, 156 Pac. 137, 'that mere non-direction by the trial judge is not reversible error, unless a specific instruction, good in point of law, covering the omission was requested and refused.' [citations omitted]"

Here, the instruction defendant insists should have been given, *sua sponte,* relates to the inherently suspect nature of accomplice testimony. In this case, however, much was made at trial of the accomplices' having delivered their testimony as a consequence of plea negotiations. And, their credibility was otherwise subject to vigorous challenge on the part of the defense.

The jury, therefore, was fully alerted to the dangers of accepting at face value the testimony of defendant's co-participants. Under such circumstances, the failure to give an accomplice instruction did not impair the fairness of defendant's trial, for there is not a "reasonable possibility" that its omission contributed to defendant's conviction. *See Barker, supra.*

Consequently, the trial court did not commit plain error in omitting such an instruction.

The judgment is affirmed.

KELLY and KIRSHBAUM, JJ., concur.