The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

Larry David **WALFORD**, Defendant-Appellant.

No. 82CA1182.

Colorado Court of Appeals, Div. I.

Oct. 3, 1985.

Rehearing Denied Nov. 21, 1985.

Certiorari Denied (Walford) March 17, 1986.

138

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

SMITH, Judge.

Defendant Larry Walford appeals the judgment of conviction entered upon jury verdicts finding him guilty of first-degree sexual assault and first-degree burglary. Walford claims the trial court erred by admitting evidence of a live lineup, by improperly instructing the jury that Walford's crime is a class 2 felony if he or another participant used a deadly weapon to cause submission of the sexual assault victim, by incorrectly defining "deadly weapon," by failing to instruct the jury on an essential element of burglary, by admitting a nude photograph of him, and by imposing an excessive sentence. We affirm.

The prosecution's evidence showed that early one morning Walford and codefendant, Stanley Topping, noticed the victim working in her lighted kitchen. Defendants entered the victim's home, went to the basement laundry room, and turned off the dryer. The victim then entered the laundry room, restarted the dryer, and was leaving when Walford grabbed her and muzzled her with his hand.

While the victim's husband and children slept upstairs, Topping slit her sweater and bra and threatened her with his hunting knife. Each defendant successively held the knife against her throat while the other raped her. Walford later went upstairs in search of money while Topping remained on guard. As defendants left, Walford turned to the victim and threatened to harm her children if she called the police.

Some days later, a police investigator arranged a voice lineup for the victim to hear. The lineup consisted of three tape recorded voice exemplars: one of Topping, one of Walford, and a third person's who spoke with an impediment. Although the

victim identified Topping's voice as the smaller assailant's and Walford's as the taller, the investigator said nothing. The trial court suppressed evidence of the voice lineup because the police failed to comply with Crim.P. 41.1 and because the court found the lineup impermissibly suggestive.

Topping later confessed to the crime and agreed to testify for the People.

### I.

Several weeks after the voice lineup was conducted, a visual identification lineup was conducted. Walford argues that the trial court improperly denied his motion to suppress evidence from this lineup. Walford contends both that the lineup was itself impermissibly suggestive and that it was tainted by the earlier voice lineup. We reject both arguments and hold that the trial court properly admitted evidence from the live lineup.

■ An out-of-court identification procedure is impermissibly suggestive if, based upon the totality of the circumstances, there is a substantial likelihood of misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1976); *Phillips v. People*, 170 Colo. 520, 462 P.2d 594 (1969). An otherwise properly conducted lineup is not constitutionally infirm where a witness knows only that a suspect has been arrested and has been included in the lineup. *United States v. Person*, 478 F.2d 659 (D.C.Cir.1973); *see People v. Gordon*, 44 Colo.App. 266, 615 P.2d 62 (1980).

At the hearing on the motion to suppress, the victim testified she had been told by police and had read in the newspaper that suspects had been arrested. However, she stated she neither knew nor suspected that either assailant was in fact in the lineup. The lineup occurred with little police direction, and no one present either reacted to or confirmed the victim's choices. Indeed, the victim was unable to identify any particular suspect; instead, she identified characteristics of three of the six suspects which were similar to those of her two assailants.

■ There is no merit to Walford's contention that the relative heights of the suspects, and the fact he was the only suspect with facial hair, operated to single him out. Since the taller assailant wore a mask, the victim could not tell whether he had facial hair. And, having reviewed photographs of the lineup, we find only minor differences in the relative heights of the suspects. We cannot say these differences were so great that they constitute an unfair lineup as a matter of law. *See Jaggers v. People*, 174 Colo. 430, 484 P.2d 796 (1971).

■ Furthermore, the victim's different estimates of the taller assailant's weight and her inability to identify Walford positively as the taller assailant go to the weight of the evidence, not its admissibility. *Cokley v. People*, 168 Colo. 52, 449 P.2d 824 (1969). We therefore find that the lineup was not so impermissibly suggestive as to deny Walford due process of law. *See People v. Gordon, supra.*

Walford however argues that the victim's identification of him at the live lineup must be suppressed because, he claims, it is tainted by the earlier voice identification which the trial court found impermissibly suggestive. Thus, Walford contends the earlier voice identification, and not the victim's independent recollection of the assault, produced her later identification of Walford at the live lineup. We disagree.

■ Even though an earlier unduly suggestive out-of-court identification has been suppressed, a later out-of-court identification may be admitted if there is an independent source for that later identification. *See People v. Renfrow*, 193 Colo. 131, 564 P.2d 411 (1977). Before the later out-of-court identification will be admitted, the People must show by clear and convincing evidence that the later out-of-court identification arises from the witness' own recollection and is not the product of the previous, unduly suggestive procedure. *See Sandoval v. People*, 180 Colo. 180, 503 P.2d 1020 (1972).

■ In determining the existence of an independent source of identification, the trial court should consider the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation with the defendant, and the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Huguley v. People*, 195 Colo. 259, 577 P.2d 746 (1978).

Here, the trial court correctly addressed these factors and found that Mrs. Worsham's later identification of Walford at the live lineup was the product of her independent recollection, and not the result of the prior, impermissibly suggestive voice lineup. We adopt those findings here. *See People v. Borrego*, 668 P.2d 21 (Colo.App. 1983).

## II.

Walford next argues that he was erroneously convicted of a class 2 felony instead of a class 3 felony because the jury instruction substantially altered the elements of the offense. We disagree.

Section 18–3–402(2)(c), C.R.S. (1978 Repl. Vol. 8) provides that sexual assault in the first degree is a class 2 felony if: "The actor is armed with a deadly weapon and uses the deadly weapon to cause submission of the victim." The trial court accordingly instructed the jury:

"If, after considering all the evidence you find that the prosecution has established beyond a reasonable doubt both that the defendant, Larry David Walford, is guilty of Sexual Assault in the First Degree and that in the commission of the sexual assault *the defendant or another participant in the crime* was armed with a deadly weapon and used the deadly weapon to cause submission of [the victim] you should so find by your verdict." (emphasis added)

Walford contends that the above statutory provision applies only to a defendant who personally used, or possessed and threatened to use, a deadly weapon to cause submission of the victim. We find Walford's interpretation of the statute too narrow.

In *People v. Swanson*, 638 P.2d 45 (Colo. 1981), the Supreme Court rejected an identical argument and held that principles of criminal complicity apply in determining whether a defendant is subject to enhanced punishment for committing a crime of violence. In so ruling, the court noted that the statutory definition of "crime of violence" does not indicate that principles of complicity do not apply.

■ Section 18–3–402(2)(c) likewise does not indicate that principles of complicity are inapplicable. We therefore hold that principles of complicity apply to sexual assault in the first degree such that if the actor or an accomplice is armed with and uses a deadly weapon then both may be found to have committed a Class 2 felony. Hence, the jury instruction given here was proper.

## III.

Walford next argues that he was improperly convicted of a class 2 felony instead of a class 3 felony because the trial court erroneously instructed the jury that a "deadly weapon means any knife." Walford admits that under the holding in *Bowers v. People*, 617 P.2d 560 (Colo.1980), a knife is *per se* a deadly weapon. He however contends that the General Assembly amended that definition in § 18–1–901(3)(e), C.R.S. (1984 Cum.Supp.).

■ As to this contention, our review is confined to a plain error standard because Walford failed both to object at trial and to raise this issue in his motion for new trial. *See People v. Barker*, 180 Colo. 28, 501 P.2d 1041 (1972); Crim.P. 30. And only when there is at least a reasonable possibility that the claimed error contributed to the defendant's conviction will it justify reversal. *People v. Mills*, 192 Colo. 260, 557 P.2d 1192 (1976).

Here, whether defendants used or intended to use a knife as a deadly weapon was not in issue. *Cf. Bowers v. People, supra.* Moreover, evidence shows the

knife was an eight-inch hunting knife. Defendants used the knife to cut the victim's sweater from her body. Defendants then held the knife to her neck; she felt its pressure, feared for her life, and subsequently submitted to defendants' sexual acts.

Hence, even if we assume, arguendo, that the court's instruction was inconsistent with the present statutory definition, we conclude that there was no plain error in giving the instruction. Moreover, since each attacker aided the other, we note that the evidence demonstrated Walford guilty of a Class 2 felony under § 18-3-402(2)(a), C.R.S. (1978 Repl.Vol. 8).

## IV.

Walford further contends that his conviction for burglary should be reversed because the trial court failed to instruct the jury on the culpable mental state element of "knowingly" taking as required under § 18-4-301, C.R.S. (1978 Repl.Vol. 8) for the ulterior crime of robbery. Review of Walford's claimed error is again limited to finding plain error because he failed to object or to preserve the issue in his motion for new trial. *People v. Barker, supra;* Crim.P. 30.

A trial court must properly instruct the jury on each essential element of the crime charged; failure to do so constitutes plain error. *People v. Bridges,* 620 P.2d 1 (Colo.1980). In cases involving burglary, the court must define the specific ulterior crime to permit the jury to determine whether the defendant's intent at the time of the incident was the intent prescribed by statute defining the offense of burglary. *People v. Archuleta,* 191 Colo. 482, 554 P.2d 307 (1976).

Here, the prosecution alleged that Walford intended to commit sexual assault and robbery. The trial court correctly defined and instructed the jury on the elements of sexual assault, and the jury found Walford guilty of sexual assault. Thus, because the offense of burglary with intent to commit sexual assault was both alleged and established here, the trial court's failure to instruct the jury properly on the required mental state of robbery was harmless error. *See People v. Barnhart,* 638 P.2d 814 (Colo.App.1981).

## V.

Walford contends that the trial court abused its discretion by admitting a nude photograph of him because its prejudicial effect substantially outweighs its probative value. We disagree.

The trial court has broad discretion in determining the admissibility of photographs. *People v. Crespin,* 631 P.2d 1144 (Colo.App.1981). Absent abuse of discretion, the trial court's ruling on the admissibility of photographs will not be disturbed on review. *People in Interest of R.G.,* 630 P.2d 89 (Colo.App.1981).

Here, the identity of Walford as the taller assailant was a major issue at trial. The victim testified that she thought the taller assailant was uncircumcised. A physician testified that the photograph showed that Walford was uncircumcised. The nude photograph of Walford was later admitted along with one of codefendant Topping to show the extent to which the difference between a circumcised and uncircumcised male would be noticeable to the victim.

We find that the trial court did not abuse its discretion in admitting the nude photograph of Walford; it is probative of his identity as the taller assailant. *See People v. Dillon,* 633 P.2d 504 (Colo.App. 1981).

## VI.

Walford finally argues that the trial court abused its discretion by imposing the maximum sentence. Walford claims that, in light of codefendant Topping's relatively light sentence of six years, his concurrent sentences of 16 and 24 years are unjust and excessive. We disagree.

Because sentencing is by its nature individualized, there is no rule that confederates in crime must receive equal sentences. *People v. Bruebaker,* 189 Colo. 219, 539 P.2d 1277 (1975). Moreover, sentencing is a complex process which requires the exercise of sound discretion by

the sentencing judge. *People v. Strong,* 190 Colo. 189, 544 P.2d 966 (1976). On review, we may not vacate or modify a sentence imposed by a trial court unless it appears the trial court clearly abused its discretion. *People v. Beland,* 631 P.2d 1130 (Colo.1981).

 In our view, the trial court did not abuse its discretion in sentencing Walford. The trial court found that, from the time he was very young, Walford had exhibited a pattern of criminal activity, and he had participated in various treatments and rehabilitative programs without success. Moreover, Walford committed the offenses at issue shortly after being placed on parole for the commission of another felony and the sentences fall within the statutory parameters of § 18–1–105(9)(a), C.R.S. (1984 Cum.Supp.). *See People v. Bruebaker, supra.*

The judgment and sentences are affirmed.

PIERCE and BABCOCK, JJ., concur.