The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Michael Bruce BENTON,
Defendant–Appellant.

No. 90CA0153.

Colorado Court of Appeals,
Div. II.

Sept. 26, 1991.

Rehearing Denied Nov. 21, 1991.

Certiorari Denied April 27, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John J. Krause, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Lawrence S. Mertes, P.C., Lawrence S. Mertes, Boulder, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Michael Bruce Benton, appeals the judgment of conviction entered on jury verdicts finding him guilty of three counts of aggravated robbery, one count of aggravated criminal extortion, one count of misdemeanor theft, and of being a habitual criminal. He received concurrent life sentences on each of the three aggravated robbery convictions and on the conviction for aggravated criminal extortion. We affirm the judgment except in one respect.

All of defendant's convictions arose out of the same criminal episode at a fast food outlet. According to the evidence at trial, defendant approached the front counter, where two cash registers were located, and requested change from one of the two employees. Upon being given the change requested, defendant seized a customer who had just been waited upon by one of the employees, placed a knife to the customer's body, and demanded that the two employees give him all of the cash in both registers. The two employees complied.

The three counts of aggravated robbery were each based upon defendant's actions in threatening the customer and demanding money, and each identified a separate victim. Two of the counts each named one of the employees, and the third count named the unidentified customer.

## I.

The crime of robbery consists of taking a thing of value "from the person or *presence* of another by the use of force, threats, or intimidation." Section 18–4–301(1), C.R.S. (1986 Repl.Vol. 8B) (emphasis supplied). The crime becomes aggravated robbery if, among other things, the perpetrator "is armed with a deadly weapon with the intent, if resisted, to kill, maim, or wound the person robbed or *any other person.*" Section 18–4–302(1)(a), C.R.S. (1986 Repl.Vol. 8B) (emphasis supplied).

The term "presence" is not defined by the statutes. However, in *People v. Bartowsheski*, 661 P.2d 235 (Colo.1983), the supreme court considered the circumstances necessary to demonstrate that the taking of an article is from the presence of another. After first noting that presence is not so much a matter of the victim being able to see the article as it is a matter of "proximity and control," the court concluded that property is taken from "the presence of another" when the article:

"is so within the victim's reach, inspection or observation that he or she would be able to *retain control* over the property but for the force, threats, or intimidation directed by the perpetrator against the victim." (emphasis supplied)

Thus, in *Bartowsheski*, the court upheld the defendant's conviction of robbery, even though the articles taken were physically located in a different room from the room in which the force was applied to the victim.

Here, after giving an instruction setting forth the elements of aggravated robbery, as set out in *COLJI-Crim.* No. 15:02 (1983), the court gave an additional instruction in which it defined "presence" by using the language from *Bartowsheski* set forth above.

### A.

■ Defendant first asserts that the giving of the instruction itself was error because it is not contained within *COLJI-Crim.* (1983) and was, instead, based upon the language in *Bartowsheski.* This contention is without merit.

In asserting error in this respect, defendant misinterprets the significance of the holdings in *Gill v. People*, 139 Colo. 401, 339 P.2d 1000 (1959) and *People v. Zuniga*, 631 P.2d 1157 (Colo.App.1981). While the opinion in each of these cases cautions trial courts against the mechanical repetition in jury instructions of language employed in previous opinions of appellate courts, neither erected any prohibition against such practice. Rather, both opinions merely emphasized the necessity, in some instances, of editing the language used in prior opinions to meet differing factual circumstances.

Here, the fact that the cash taken was not upon the "person" of any of the three alleged victims presented the question, in the case of each of the three counts, whether it was within the "presence" of each of them. *See People v. Marquez*, 692 P.2d 1089 (Colo.1984). Thus, some instruction defining the concept of "presence" under the statute was appropriate.

Further, the general definition of "presence" contained in the *Bartowsheski* opinion was the accurate standard to be applied in determining whether the two employees had control over the cash in the two registers at the time that it was taken. With respect to the two counts of aggravated robbery that named the two employees as victims, therefore, the instruction defining "presence" was warranted by the evidence, and its form was not improper.

### B.

■ We do agree with defendant, however, that his conviction of aggravated robbery of the restaurant customer cannot stand. While his argument as to this count is framed as a claim of instructional error, his argument leads to the conclusion that the evidence was insufficient to sustain his conviction upon this count, and with this conclusion we agree.

As the *Bartowsheski* opinion notes, "presence" within the meaning of § 18-4-301(1) does not require the article to be within the eyesight or the reach of the victim so long as it is sufficiently proximate to the victim that he or she may exercise control over it. At the same time, § 18-4-302(1)(a) recognizes that the force applied to obtain the article may be applied to some "other person" and not necessarily to the "person robbed."

■ Hence, we conclude that, in order to commit the crime of robbery against an individual who does not have physical possession of the article taken, *i.e.*, in order to take property from such an individual's "presence," that individual must be exercising, or have the right to exercise, control over the article taken. *See Rex v. Fallows*, 5 Car. & P. 508, 172 Eng. Reprint 1075 (1832) (assaulting one person to obtain property in possession of another does not constitute the crime of robbery); 4 C.E. Torcia, *Wharton's Criminal Law* § 482 at 76 (14th ed. 1981) ("Although the capacity of the victim is immaterial, it is essential that he have possession or control of the property because, by definition, property cannot be taken from the person or presence of another unless he had possession or control of the property.").

Here, the undisputed evidence was that the customer did not have possession of the money in the cash registers, he was not exercising any control over it at the time he was assaulted, and there was no showing that he had any right of control. The evidence, therefore, demonstrated, as a matter of law, that, although the customer was the victim of several offenses perpetrated by defendant, he was not the victim of an aggravated robbery. Accordingly,

defendant's conviction and sentence as to that one count cannot stand.

## II.

Defendant also argues that the trial court erred in refusing his request, made shortly after arraignment, to appoint a "research intern/legal assistant to research a number of legal issues." We disagree.

■ The provision of investigatory, expert, or other services to aid an indigent defendant rests within the sound discretion of the trial court. And, if defendant fails to show that requested services of this type are necessary, reasonable, or helpful, that discretion is not abused by a failure to provide such services. *Brown v. District Court*, 189 Colo. 469, 541 P.2d 1248 (1975).

■ Here, defendant asked both for the services of an investigator, which the court provided, and for a "legal assistant." The only basis for the latter request was that defendant sought to determine:

"whether the chronic offender program is being applied in a selectively improper manner ... and whether the three habitual criminal counts were filed ... in an improper selective prosecutorial manner."

Yet, at the time defendant made this request, which was nearly one year before trial, he did not provide any factual basis even for a suspicion of selective prosecution. Likewise, he failed to explain either what "research" was required to be done, what "legal issues" were required to be considered, or why his appointed counsel could not perform such research. And, he never renewed his request at any later time.

Under such circumstances, the trial court did not abuse its discretion in denying defendant's request.

## III.

■ Defendant finally contends that, because the "prison packet" failed to contain defendant's fingerprints at the time of his 1982 incarceration in Canon City, the proof was insufficient to demonstrate that he had been convicted of three prior felonies. We reject such a conclusion.

The record demonstrates, and defendant does not contest, that a Michael B. Benton was convicted of certain felonies in 1981 (Denver District Court No. 80CR2156), 1982 (Arapahoe County District Court No. 81CR762), and 1983 (Denver District Court No. 83CR683).

In addition, the prison records admitted into evidence, together with the testimony of their custodian, establish that a Michael B. Benton first arrived in Canon City shortly after his 1981 felony conviction, where his photograph was taken, his fingerprints were recorded, and a prisoner number was assigned to him. Defendant does not contest the sufficiency of the evidence to establish that he was this Michael Benton.

The records also reflect that this Michael Benton was released on parole, but thereafter re-incarcerated upon his parole being revoked for the same incidents upon which the 1982 felony conviction was based. Upon his return, he was assigned the same prisoner number as before, and his photograph was taken. Through inadvertence, however, his fingerprints were not then obtained. Sometime after his 1982 conviction, he was again released.

Finally, in October 1983, Michael B. Benton was incarcerated in Canon City for a third time. Again, his photograph was taken, his fingerprints were recorded, and he was assigned the same prisoner number as assigned to him previously.

Defendant does not contest the sufficiency of the evidence to establish his identity as the Michael B. Benton who was convicted in 1981 and 1983. He asserts, however, that the lack of a fingerprint record for the person incarcerated in 1982 renders the evidence insufficient to prove that he was the person convicted in 1982. However, we are satisfied that the evidence presented was sufficient to allow a reasonable fact finder to determine, beyond a reasonable doubt, that the defendant was the same Michael B. Benton who had been convicted of the three previous felonies upon which the habitual criminal charges were based.

The judgment of the trial court is affirmed, except that the judgment of conviction of aggravated robbery of the customer is reversed, and the sentence imposed for defendant's conviction upon such count is vacated. Because the sentence imposed for conviction upon this count was to be served concurrently with the sentence imposed for conviction of the other two counts charging aggravated robbery, there is no need for further proceedings in the trial court.

SMITH and REED, JJ., concur.