The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Randy Eugene RIDENOUR,
Defendant–Appellant.

No. 92CA0104.

Colorado Court of Appeals,
Div. I.

Jan. 13, 1994.

Rehearing Denied Feb. 17, 1994.

Certiorari Denied Aug. 15, 1994.

Robert R. Gallagher, Jr., Dist. Atty., Brian K. McHugh, Deputy Dist. Atty., and Patryce S. Engel, Intern Deputy Dist. Atty., Englewood, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, and Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.[*]

Defendant, Randy Eugene Ridenour, appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts

---

[*] Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24-51-1105, C.R.S. (1988 Repl.Vol. 10B).

of aggravated robbery, one count of second degree kidnapping, and one count of first degree burglary. We reverse the conviction on one count of aggravated robbery, but otherwise affirm.

Shortly after midnight on September 30, 1990, a man later identified as defendant followed a theater customer into the otherwise empty theater restroom and drew a gun. He stated that he intended to rob the theater and demanded the customer's cooperation. The robber then concealed the gun in a shoulder holster and forced the customer to walk to the ticket booth.

There, the robber told the ticket taker that he had caught the customer doing something wrong and asked that they be taken to see the manager. The ticket taker, robber, and customer then entered the manager's office, where an assistant manager was engaged in a social visit with a non-employee.

The robber informed all those present that he was robbing the theater and instructed everyone but the assistant manager to lie on the floor. He ordered the assistant manager's friend to tear out the telephone wires and forced the assistant manager to open the safe and to give him the money inside. The robber, who wore an earpiece with a wire running under his shirt, warned them not to alert the police for five minutes because he had a police radio scanner and might return and harm them if he heard an alarm called in.

As a result of this incident, defendant was charged, tried, and convicted of second degree kidnapping of the theater customer, two counts of aggravated robbery of both the assistant manager and the ticket taker, and first degree burglary of the theater.

## I.

█ Defendant first asserts that the jury was not properly instructed that the asportation element of second degree kidnapping requires a substantial increase in risk of harm to the victim. We disagree.

█ Section 18–3–302(1), C.R.S. (1986 Repl.Vol. 8B) provides that:

[A]ny person who knowingly, forcibly, or otherwise seizes and carries any person from one place to another ... commits second degree kidnapping.

To satisfy the "seizes and carries," or asportation, element of second degree kidnapping, the victim must not only be moved, but that movement must also substantially increase the risk of harm to the victim. *People v. Fuller,* 791 P.2d 702 (Colo.1990); *Apodaca v. People,* 712 P.2d 467 (Colo.1985).

Here, the elemental instruction merely required that the jury find that defendant "seized and carried [the victim] from one place to another." However, another instruction further defined "seized and carried" as meaning "any movement, however short in distance, that results in a substantial increase in harm to the victim."

█ The form of jury instructions given at trial is within the sound discretion of the trial court. *States v. R.D. Werner Co.,* 799 P.2d 427 (Colo.App.1990). Furthermore, it is not error for the court to refuse a tendered instruction, even if correct in legal effect, if the other instructions given adequately apprise the jury of the appropriate law. *People v. Mackey,* 185 Colo. 24, 521 P.2d 910 (1974); *People v. Banks,* 804 P.2d 203 (Colo.App. 1990).

We are satisfied, therefore, that, taken together, the instructions here properly apprised the jury of all of the elements of second degree kidnapping.

## II.

█ Defendant next contends that the evidence presented at trial was insufficient to establish the "substantial increase in risk of harm" element of second degree kidnapping. We also disagree with this contention.

Defendant, relying on *People v. Bell,* 809 P.2d 1026 (Colo.App.1990), argues that the movement of the theater patron from the restroom to the manager's office, where several people were present, actually decreased the victim's risk of harm. However, in *Bell,* the victim was moved at gunpoint from a living room to a bedroom, where he was left unattended long enough to call the police. Because the victim was not confined at gun-

point once in the bedroom and escape routes were available, the court concluded that no substantial increase in risk of harm to the victim had occurred. *See Bell, supra.*

In contrast, here, the victim was forced at gunpoint to accompany a criminal from a public restroom to the site of an armed robbery in a small, fully enclosed office. He was then warned of retribution if he called the police. This is more than sufficient evidence to establish movement that substantially increases the risk of harm to the victim. *See People v. Huggins,* 825 P.2d 1024 (Colo.App. 1991) (moving victim short distance, from office to small enclosed bathroom with no escape route, increased risk of harm); *Sheriff v. Medberry,* 96 Nev. 202, 606 P.2d 181 (1980) (moving persons to different part of prison, where gunfire was being exchanged, substantially increased risk of harm).

### III.

■ Defendant next asserts that the evidence presented at trial was insufficient to sustain the conviction for aggravated burglary. We find no error.

Prior to the holdup, defendant entered the theater by purchasing a ticket. Because he possessed a valid license to enter and remain in the theater for the purpose of viewing a film, defendant argues that he further possessed an implied right to enter the manager's office, thereby negating the "unlawful entry" element essential to the offense of burglary.

■ Unlawful entry, for purposes of burglary, is defined by 18–4–201(3), C.R.S. (1986 Repl.Vol. 8B), which provides, in relevant part:

A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege. . . . *A license or privilege to remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public.* (emphasis supplied)

Premises "open to the public" for purposes of the statute means premises which "would cause a reasonable person to believe no permission to enter or remain is required." *People v. Bozeman,* 624 P.2d 916, 918 (Colo. App.1980).

Here, the manager's office was a completely enclosed space within the theater, used for storage of business records, supplies, and the theater safe. One of the theater employees specifically testified that the manager's office was not open to the public. In addition, the defendant's use of a pretense in order to gain the ticket taker's permission to enter this office indicates that he was aware that it was not open to the public.

We conclude, therefore, that sufficient evidence was presented to establish that a reasonable person would believe that the office was closed to the public, and defendant's entry was unlawful despite any limited license previously granted. *See People v. Barefield,* 804 P.2d 1342 (Colo.App.1990) (general grant of authority to an employee to enter or remain in a building does not automatically grant that employee the right to enter offices within the building); *State v. Sanchez,* 105 N.M. 619, 735 P.2d 536 (App. 1987) (unlawful entry into office located inside church which was otherwise open to public).

### IV.

■ Defendant also asserts that the evidence was insufficient to establish that the money in the office safe was taken from the "presence" of the ticket taker, as required by § 18–4–301(1), C.R.S. (1986 Repl.Vol. 8B), and that his conviction of that robbery must, therefore, be set aside. With this contention, we agree.

In *People v. Bartowsheski,* 661 P.2d 235, 244 (Colo.1983), our supreme court concluded that property is taken from the presence of another when the article is "so within the victim's reach, inspection or observation that he or she would be able *to retain control* over the property but for the force, threats, or intimidation directed by the perpetrator against the victim." (emphasis supplied)

The meaning of "presence" was further elaborated upon in *People v. Benton,* 829

P.2d 451 (Colo.App.1991), in which the defendant held a customer of a fast-food restaurant at knife point and demanded that the restaurant employees give him cash from the register. In reversing that defendant's conviction for the robbery of the customer, a division of this court stated that: "[I]n order to commit the crime of robbery against an individual who does not have physical possession of the article taken, *i.e.,* in order to take the property from such an individual's 'presence,' that individual must be exercising, or have the right to exercise, control over the article taken." *People v. Benton, supra,* 829 P.2d at 453. Because the customer did not have possession of, or any right to control, money in the cash register, the *Benton* court concluded that the customer could not have been the victim of a robbery.

Here, the ticket taker accompanied the robber to the manager's office, where he and all others present, save the assistant manager, were instructed to lie on the floor. The robber then directed the assistant manager alone to open and retrieve cash from the safe.

Because the ticket taker did not have physical possession of the money taken, he could have been the victim of a robbery only if he had the right to exercise control over that money. However, no evidence that he had such right was offered at trial. On the contrary, the only evidence presented established that the ticket taker's duties consisted only of taking tickets and opening and closing theater doors between screenings. He was not authorized to accept payment for tickets, and there is no evidence that he had access to the safe or that he could exercise any control over its contents.

Hence, although the ticket taker may have been the victim of other crimes, the evidence presented could not support the finding that he was in possession of or had control over the money taken—an element necessary to be established in order to prove that he was the victim of an aggravated robbery.

## V.

Defendant next contends that the trial court erred in admitting into evidence items seized from defendant's home and in admitting evidence of a similar robbery of another theater. We reject both contentions.

### A.

At trial, three handguns and a holster seized from defendant's home were admitted into evidence. Defendant claims error; he asserts that, because no testimony was presented at trial that connected either the handguns or holster to the robbery charged, this evidence lacked probative value. We disagree.

The trial court is vested with wide discretion in determining the relevancy of proffered evidence. And, evidence which tends logically to prove or to disprove a fact at issue or which allows reasonable inferences upon contested matters is relevant. CRE 401 & 402; *People v. Carlson,* 677 P.2d 390 (Colo.App.1983), *aff'd,* 712 P.2d 1018 (Colo. 1986).

Here, contrary to defendant's assertion, there was evidence connecting one of the weapons and holster to the robbery charged. Several witnesses testified that one of the handguns admitted was similar to that used in the robbery and that the holster was of a similar design, although not of the same color.

Therefore, we are satisfied that admission of the similar weapon and the holster was not error. *See* CRE 401; *People v. Bueno,* 626 P.2d 1167 (Colo.App.1981) (not error to admit shotgun owned by defendant that was described as similar to one used in robbery).

Further, having reviewed the record, we conclude that, even if admission of the other two handguns was error, such error was harmless in light of the overwhelming evidence of defendant's guilt. *See People v. Henderson,* 729 P.2d 1028 (Colo.App.1986).

### B.

Defendant also claims the trial court abused its discretion by admitting evidence of a similar robbery offered by the People to establish identity and *modus operandi.* However, the admission of this evidence was proper.

At trial, an assistant manager of another theater in Denver testified that, on a Sunday evening in February 1991, a man with a gun entered the theater office, told the other employees present to lie on the floor, and ordered the assistant manager to give him cash from the safe. She testified that the robber wore an earpiece with a wire running down his shirt and warned the employees that he had a police scanner, that they should not call the police, and that they were to wait five minutes in the office. He also pulled the telephone cord out of the wall. The assistant manager also identified defendant as the perpetrator of this other robbery at a pretrial police lineup and at trial.

Defendant's argument is limited to the assertions that the two robberies were not sufficiently similar to be admissible for the purpose of identity. We reject this argument.

Given the striking similarity of the two robberies, the admission of this evidence was not an abuse of discretion. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

## VI.

■ Defendant also contends that he was denied the right to present a defense by the court's failure to grant a continuance to allow him to obtain the attendance of a witness to the other robbery. We do not agree.

Defendant wished to secure the testimony of an employee of the other theater, who failed to pick defendant out of the same police lineup from which the assistant manager identified him. Defendant was notified in August 1991, more than a month before trial, that the People would attempt to present evidence of the other robbery. A hearing was held on September 19, in which the court ruled on the admissibility of that evidence. The defense stated at that time that it was having trouble securing the attendance of a witness, who now lived in Washington and refused voluntarily to come to Colorado for the trial. Although defendant later filed a motion to exclude the evidence or to continue the trial, the court apparently never ruled on this motion, nor did the defense request a ruling. Nevertheless, a stipulation that the

out-of-state witness failed to identify defendant was read to the jury.

Defendant claims that he was given insufficient notice to obtain the attendance of the witness. Because defendant was given over a month to secure the attendance of the witness, there was sufficient notice.

■ He also asserts that the court erred in failing to rule on the motion to continue. This argument fails for at least two reasons.

First, it appears that he was able, through stipulation, to advise the jury of the absent witness' failure to identify defendant.

Second, by not requesting a ruling on his motion to continue and by accepting the stipulation, he abandoned the motion and waived his right to assert error on appeal. *See Feldstein v. People,* 159 Colo. 107, 410 P.2d 188 (1966) (the moving party must see to it that the court rules on the matter at issue); *People v. Weese,* 753 P.2d 778 (Colo.App. 1987) (failure to renew motion is waiver).

## VII.

■ Defendant next contends that the trial court erred in denying his motion to suppress testimony of several witnesses that they had identified defendant as the robber in a police lineup. We also reject this contention.

Defendant asserts that age differences between himself and the other lineup participants and the fact that defendant wore white tennis shoes during the lineup, while all other participants wore black dress shoes, created an impermissibly suggestive lineup in violation of his due process rights.

■ An out-of-court physical lineup is impermissibly suggestive only if there is a substantial possibility of misidentification, based on the totality of the circumstances. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *People v. Walford,* 716 P.2d 137 (Colo.App.1985).

We have reviewed a videotape of the lineup and perceive only minimal differences in the apparent ages of defendant and the other lineup participants. In fact, the other participants closely resembled defendant in height, weight, hair color, and general physical char-

acteristics. Any apparent age difference was so slight that, as a matter of law, it could not constitute an unfair lineup. *See People v. Walford, supra.*

Further, although defendant's white tennis shoes were distinctive compared to the other participants' footwear, given the totality of the circumstances, including that witnesses had ample time to observe the robber during the crime, the accuracy of their prior descriptions, and the physical similarities and otherwise identical clothing of the defendant and other lineup participants, we conclude that the record supports the trial court's finding that the different types of shoes worn by defendant and other lineup participants was not so impermissibly suggestive as to raise a substantial possibility of misidentification. *See People v. Martin,* 791 P.2d 1159 (Colo. App.1989).

## VIII.

■ Defendant finally argues that the court erred in denying his motion for a new trial based on newly discovered evidence. We disagree.

After the jury returned its verdicts, defendant asserted that, during the trial, his wife had discovered a church service program, dated the same day as the robbery, in one of defendant's suits. This discovery allegedly jogged her memory that she and defendant attended that church service with friends on the day of the robbery and had afterwards had dinner at the friends' house. Defendant and his wife allegedly left for home around 10:00 p.m.

Although this new evidence was allegedly discovered by defendant's wife during trial, it was not brought to the court's attention until after trial, when defendant filed a motion for a new trial with attached affidavits from the friends in support of this alibi defense. Defense counsel stated during the post-trial hearing on this issue that, because he was in the middle of trial when this alibi evidence was discovered, he did not have an adequate opportunity to investigate its reliability at that time.

■ Motions for new trial based on newly discovered evidence are not favored by the courts, and a denial of such a motion will not be overturned without a clear showing of an abuse of discretion. *People v. Gutierrez,* 622 P.2d 547 (Colo.1981). Such a motion should only be granted if the defendant shows:

> [T]hat the evidence was discovered after the trial; that defendant and his counsel exercised reasonable diligence to discover all possible evidence favorable to the defendant prior to and during the trial; that the newly discovered evidence is material to the issues involved ... and that on retrial the newly discovered evidence would probably produce an acquittal.

*People v. Scheidt,* 187 Colo. 20, 22, 528 P.2d 232, 233 (1974).

Applying these standards, the trial court refused to grant a new trial based on this evidence. It concluded that this new evidence, which was technically part of defendant's knowledge at the time of trial, could have been discovered and presented at trial, especially in light of the seven-month period between arrest and trial.

Further, the court determined that this evidence would not have made a difference in the outcome of the trial because it only explained defendant's whereabouts until 10:00 p.m. on the night of the robbery. There was testimony from the witnesses that the movie for which defendant purchased a ticket did not start until 10:20 and that defendant was one of the last persons to purchase a ticket before the start of the film.

Hence, the "alibi" could not explain defendant's whereabouts at the time the robber entered the theater, much less his whereabouts at the time of the robbery some two hours later.

Accordingly, we perceive no abuse of discretion in the trial court's denial of defendant's motion. *See People v. Guiterrez, supra; People v. Estep,* 799 P.2d 405 (Colo.App. 1990).

The judgment of the trial court is affirmed, except that the judgment of conviction of aggravated robbery of the ticket taker is reversed, and the sentence imposed for defendant's conviction upon such count is vacated.

PIERCE, J., concurs.

METZGER, J., concurs in part and dissents in part.

Judge METZGER concurring in part and dissenting in part.

I respectfully dissent from that portion of the majority's opinion reversing defendant's conviction of the aggravated robbery of the theater ticket taker.

Relying on *People v. Benton*, 829 P.2d 451 (Colo.App.1991), the majority concludes that the evidence is insufficient to support a robbery conviction because there is no direct showing that the ticket taker had control over, or the right to control, the money. In *Benton, supra* at 453, a division of our court held:

> Hence, we conclude that, in order to commit the crime of robbery against an individual who does not have physical possession of the article taken, *i.e.*, in order to take property from such an individual's 'presence,' that individual must be exercising, or have the right to exercise, control over the article taken.

Thus, it concluded, a customer held hostage with a knife to his body was not a victim of an aggravated robbery because "there was no showing that he had any right of control" over the cash from a fast-food restaurant.

In essence, that opinion equates control with ownership, at the most, and with a legal rather than a practical right to control, at the least. Engrafting either of these requirements onto the definition of control is the functional equivalent of adding an element to the statute. Such policy-based decisions are best left to the General Assembly.

Because I believe that the issue of control should be analyzed in a fact-based totality of the circumstances manner, I disagree with that holding.

Instead, I would adhere to the rule in *People v. Bartowsheski*, 661 P.2d 235 at 244 (Colo.1983):

> We hold that property is taken from the 'presence of another' when it is so within the victim's reach, inspection or observation that he or she would be able to retain control over the property but for the force,

threats, or intimidation directed by the perpetrator against the victim.

In that case, our supreme court upheld the defendant's conviction of aggravated robbery of an 8–year–old child who was present in one room of the family home while the taking occurred within another room.

Here, the ticket taker was one of two theater employees on the premises during the robbery. Some of his duties, as he described them, were to direct patrons to proper locations within the theater and to make sure that all patrons had left the theater before he closed it for the night.

While the ticket taker was waiting in the front of the theater for the movies to conclude, the robber and a customer (who, unbeknownst to the ticket taker, was being held hostage) approached him. The robber said, "I caught this gentleman doing something. I would like to speak to the manager." The ticket taker replied, "She's around the corner in her office," and pointed out the direction. The robber then asked, "Can you take me to her?" The ticket taker led both men to the manager's office, opened the door, and all three went inside the 9' × 9' room.

The robber then shut the door, flipped the dead-bolt lock shut, and announced, "This is a robbery and I have a police scanner, so if you call the cops, I'll be back after I leave." He also said that he had a gun and was "not afraid to use it." He ordered the ticket taker to lie face down on the floor by the door, instructed the assistant manager to turn over the money from the safe, and left with the money.

The ticket taker testified that he elected not to try to stop the robber for fear that he would be killed. Another witness testified that the ticket taker had to move his feet so that the robber could open the door of this small room and leave with the money.

In my view, these facts conclusively demonstrate that the money was sufficiently within the ticket taker's reach, inspection, and observation, as set out in *People v. Bartowsheski, supra*, to support the jury's determination that defendant committed aggravated robbery of him.

Alternatively, even applying the overly strict standard set out in *People v. Benton, supra,* the facts and inferences, when viewed in the light most favorable to the verdict, *see People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973), compel the conclusion that the ticket taker was the victim of an aggravated robbery.

By virtue of his employment, the ticket taker was required to ensure that patrons confined themselves to designated areas of the theater. The robber recognized that right of control over theater property when he asked the ticket taker to take him to the manager's office, a location not accessible to the general public. And, the defendant's actions in the office demonstrate his intent to wrest control of theater property from its custodians, both the manager and the ticket taker.

Thus, I would affirm defendant's conviction of that charge. In all other respects, I concur with the majority opinion.