The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Jerry T. **KEARNS**, Defendant–Appellant.

No. 97CA2257.

Colorado Court of Appeals, Div. V.

May 27, 1999.

Rehearing Denied July 8, 1999.

Certiorari Denied Nov. 15, 1999.

Gale A. Norton, Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, John D. Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Randy C. Canney, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Jerry T. Kearns, appeals the judgment of conviction and sentence entered upon a jury verdict finding him guilty of vehicular assault and driving under the influence (DUI). We affirm, but remand for imposition of sentence on defendant's DUI conviction and for correction of the mittimus.

Defendant was involved in an accident in which the pickup truck he was driving struck a motorcycle in an intersection, severely injuring the driver of the motorcycle. He was charged with vehicular assault, § 18–3–205(1)(b), C.R.S.1998, a class four felony, and with two misdemeanor offenses, DUI, § 42–4–1301, C.R.S.1998, and DUI *per se*, § 42–4–1301(2)(a), C.R.S.1998.

Prior to trial, defendant moved for dismissal of the charges or alternative relief, alleging that the police had failed to obtain and preserve exculpatory evidence specifically, a blood sample from the victim that could have been tested for alcohol or drugs. After several hearings, the trial court denied the motion.

At trial, the prosecution presented evidence that the collision resulted from defendant's intoxication and his failure to stop at a stop sign. Investigating officers testified that: (1) following the collision, the victim was unconscious and immediately taken from the scene by ambulance; (2) defendant admitted having consumed alcohol, appeared to be intoxicated, and failed a roadside sobriety test; (3) skid marks on the pavement were inconsistent with defendant's initial statement that he had stopped before proceeding into the intersection; (4) tests indicated that defendant's blood alcohol level at the time of the accident was .161 milligrams of alcohol per 100 milliliters of blood; and (5) the victim had been traveling on a through street and had the right of way.

Defendant presented evidence that the victim's divorce had become final on the day preceding the accident and that the victim had made purchases at two bar/restaurants that evening. The defense theory was that the victim had been drinking alcohol, possibly had run a stop light at the previous intersection, and was driving his motorcycle at a high rate of speed at the time of the collision. Defendant contended that the victim's actions constituted an intervening cause of the accident.

The jury found defendant guilty as charged. However, prior to sentencing, the trial court granted defendant's motion to vacate his conviction on the first DUI count because it was a lesser included offense of vehicular assault. The court then sentenced defendant to the Department of Corrections for a period of three years, plus two years mandatory parole, for vehicular assault. The mittimus does not reflect imposition of a sentence for defendant's remaining DUI conviction.

## I.

Defendant contends that the trial court erred in denying his motion for dismissal or alternative relief based on the officers' failure to obtain a blood sample from the unconscious victim for alcohol testing. He argues that their failure to do so denied his right to due process and was contrary to statutory mandate. We find no reversible error.

## A.

Contrary to defendant's contention, we conclude that the officers' failure to obtain a test of the victim's blood did not violate defendant's right to due process.

■ Unless a criminal defendant can show bad faith on the part of the police, failure to preserve evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," does not constitute a denial of due process. *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988); *see also People v. Wyman*, 788 P.2d 1278 (Colo.1990).

∎ ■ Here, the record does not support defendant's assertion that a test of the victim's blood "would have been exculpatory." Rather, as the trial court found, such a test, at best, "might" have provided exculpatory evidence.

The record also supports the trial court's finding that the failure to obtain the blood test was not the result of bad faith. Therefore, the court properly concluded that defendant had not established a due process violation.

## B.

We likewise reject defendant's contention that, even if due process did not so require, he was entitled to dismissal or alternative relief because the officers violated a statutory obligation to obtain a sample of the victim's blood for testing.

In support of his contention that obtaining the blood sample in question was mandatory, defendant relies on language in the statutes governing vehicular assault and DUI, both of which require that "[a]ny person who is dead or unconscious shall be tested to determine the alcohol or drug content of [that person's] blood ... as provided in this subsection." *See* §§ 18–3–205(4)(e) and 42–4–1301(7)(c), C.R.S.1998.

The People argue, and the trial court held, that the police had no duty to obtain blood samples under these provisions unless there was probable cause to believe the person to be tested had violated the DUI or vehicular assault statutes. The People further contend that there was no such probable cause here.

We do not decide whether §§ 18–3–205(4)(e) and 42–4–1301(7)(c) require testing even absent probable cause or, if probable cause is required, whether it was present in this case. Even if we assume that the officers' failure to obtain a sample of the victim's blood violated the statutory mandate, we conclude that such violation does not afford an independent basis for reversal of defendant's conviction.

■ Where a defendant's right to due process has not been denied, violation of a statutory obligation imposed on the prosecution or the police does not, without more, warrant dismissal or a similar sanction. *See Salazar v. People*, 870 P.2d 1215 (Colo.1994).

■ In such circumstances, consideration of the intent and purpose of the statute is appropriate to determine whether the defendant can properly rely on an asserted statutory violation to escape civil or criminal liability. *See People v. Ybarra*, 190 Colo. 409, 547 P.2d 925 (1976)(violation of statute requiring written waiver of speedy trial would not inure to defendant's benefit where result was contrary to intent of statute); *see also Minnelusa Co. v. Andrikopoulos*, 929 P.2d 1321 (Colo.1996)(permitting corporation to void transactions through application of the statute designed to protect creditors and minority shareholders would be a misapplication of the statute and would circumvent its intended purpose).

■ The provisions on which defendant relies are part of statutes which describe criminal offenses vehicular assault and DUI and which include extensive provisions regarding blood testing in circumstances where

there is an apparent statutory violation. There is no indication anywhere in these statutes that their blood testing provisions are intended to benefit defendants facing criminal charges for vehicular assault or DUI.

Indeed, since the presence of alcohol in the blood of any other person is irrelevant to the criminal liability of a defendant charged with DUI, the inclusion in the DUI statute of the provision mandating blood testing of dead or unconscious persons suggests that the blood testing provisions are *not* for the benefit of defendants. Although a victim's blood alcohol content could be relevant to a driver's intervening cause defense to a vehicular assault charge, *see People v. Gentry*, 738 P.2d 1188 (Colo.1987), we are not persuaded to interpret the language in § 18–3–205(4)(e) differently from the identical language in § 42–4–1301(7)(c), or to find that the two identical provisions have different purposes, solely on this basis.

In sum, where there has been no due process violation, and where there is nothing to suggest that the statutory blood-testing provisions at issue were intended to benefit persons facing criminal charges, we conclude that a violation of such provisions does not afford an independent basis for reversal of defendant's conviction.

## II.

Defendant next contends that the trial court committed reversible error by refusing to instruct the jury that (1) a driver approaching an intersection controlled by a stop sign is entitled to assume that the vehicle approaching from the right was not speeding, and (2) a driver who has the right of way must nevertheless use reasonable care. We disagree.

■ It is not error to refuse even a legally correct tendered instruction if the other instructions given adequately apprise the jury of the applicable law. *People v. Ridenour*, 878 P.2d 23 (Colo.App.1994). A trial court may properly refuse instructions which restate matters already encompassed in other instructions, *People v. Inman*, 950 P.2d 640 (Colo.App.1997), or which are not

supported by the evidence. *See People v. Dooley*, 944 P.2d 590 (Colo.App.1997).

■ The trial court found, and we agree, that the jury was adequately instructed on the elements of vehicular assault and on the issues of causation, and that the court was thus not required to give defendant's tendered instructions, which were taken from civil negligence cases.

The jury was instructed that the prosecution had to prove beyond a reasonable doubt that defendant operated his vehicle while under the influence of an intoxicant, and that this conduct was the proximate cause of the victim's injury. Further, it was instructed as to the meaning of "proximate cause" and as to defendant's contention that his actions did not fall within that definition because the victim's actions constituted an intervening cause. Defendant's tendered instructions did not go to issues that were relevant to his intervening cause defense. *See People v. Hickox*, 751 P.2d 645 (Colo.App.1987)(no error to refuse instructions regarding looking but failing to see and right to assume others will obey the law, as instructions addressed only the victim's contributory negligence in failing to avoid the collision and thus did not raise a valid defense to vehicular assault charges).

Finally, to the extent defendant intended by these instructions to suggest that the accident occurred because he misjudged the motorcycle's speed, they were not supported by the evidence. Rather, defendant's own statement, as testified to by the investigating officer, was that, *after* he entered the intersection, the motorcycle "came out of nowhere."

## III.

Defendant further contends that the trial court abused its discretion in sentencing him to a term of three years incarceration in the Department of Corrections. He argues that the court considered punishment to the exclusion of other sentencing factors, including rehabilitation, and that his sentence was disproportionate to sentences imposed in similar cases. We are not persuaded.

■ Sentencing is a matter that rests specifically within the trial court's discretion. If the sentence imposed is within the range required by law, is based on appropriate considerations as reflected by the record, and is factually supported by the circumstances of the case, an appellate court must uphold it. *People v. Fuller,* 791 P.2d 702 (Colo.1990).

■ The basic factors implicated in any sentencing decision include the gravity of the offense, the extent of injury caused to the victim, the defendant's societal history and prior criminal record, the risk of future criminal conduct posed by the defendant, and the potential of the defendant for effective rehabilitation. *People v. Madril,* 746 P.2d 1329 (Colo.1987).

■ The trial court imposed a sentence in the lower half of the applicable two-to-six year presumptive range for defendant's class four felony. In doing so, it specifically considered the above factors, including defendant's character and potential for rehabilitation, but concluded that a less severe sentence would be unwarranted in light of the victim's "devastating injuries" which included a head injury resulting in a prolonged coma and permanent disability and the need to deter the sort of unlawful conduct that led to those injuries. Contrary to the defendant's argument, the sentence imposed does not justify an inference of gross disproportionality or unjustified disparity in sentences. *See* § 18–1–102.5(1)(b), C.R.S.1998; *People v. Hayes,* 923 P.2d 221 (Colo.App. 1995).

Because the sentence for vehicular assault is within the range prescribed by law, is based on appropriate considerations as indicated by the record, and is factually supported by the circumstances of the case, it must be upheld. *See People v. Fuller, supra.*

■ However, neither the transcript of the sentencing hearing nor the mittimus reflects that the trial court imposed sentence for defendant's misdemeanor DUI conviction pursuant to § 42–4–1301(2)(a). Therefore, the cause must be remanded for imposition of sentence and correction of the mittimus to reflect the sentence imposed. *See* Crim. P. 32(c).

The court also is directed on remand to correct the clerical errors appearing on the mittimus, which incorrectly cites the offenses of which defendant was convicted. Specifically, the mittimus must reflect defendant's conviction of vehicular assault in violation of § 18–3–205(1)(b), rather than § 18–3–205(1)(a) as currently set forth, and his conviction of driving under the influence in violation of § 42–4–1301(2)(a), not § 42–4–1301(1)(a), C.R.S.1998.

The judgment and the sentence imposed for the felony conviction are affirmed, and the cause is remanded for further proceedings as directed herein.

Judge DAVIDSON and Judge BRIGGS concur.