The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

Richard G. **HELLER**, Defendant-Appellant.

No. 82CA0918.

Colorado Court of Appeals, Div. II.

Aug. 30, 1984.

Rehearing Denied Sept. 27, 1984.

Certiorari Granted April 15, 1985.

I.

■ Defendant's first argument is that the trial court erred in denying his motion for severance of defendants. We disagree.

Severance issues are properly determined by applying the two-part test contemplated by § 16–7–101, C.R.S. (1978 Repl.Vol. 8): (1) whether there is material evidence admissible against one but not all of the parties; and (2) whether admission of that evidence would be prejudicial against those parties against whom the evidence is not admissible. *People v. Gonzales*, 198 Colo. 450, 601 P.2d 1366 (1979).

The trial court admitted evidence at trial regarding a number of counts in the indictment with which co-defendants Thornton and Bragar, but not defendant, were charged. Under similar circumstances, the Supreme Court stated:

"[W]e recognize that the trial court properly advised the jury on the use of the evidence that was admitted; moreover, there is a strong presumption that the jury followed the trial court's instructions.... Thus, the question to be resolved becomes whether the admitted evidence was so inherently prejudicial that the jury could not have limited its use to its proper purpose. That question is a matter for the sound discretion of the trial court and should not be reversed absent a clear abuse of that discretion." *People v. Gonzales, supra.*

Here, we find no such clear abuse of discretion by the trial court.

As was the case in *Gonzales,* following the parties' opening statements, the trial court gave cautionary instructions to the jury, limiting its use of evidence regarding a particular defendant to only that defendant. Specifically, the court orally warned the jury against allowing its opinion regarding one defendant "to spill over into your decisions as to other defendants in a different count." The court advised the jury that each defendant is entitled to have each charge treated separately and only on the evidence as it pertains to that count. In addition, the written instructions to the jury contained the following admonition:

Duane Woodard, Atty. Gen., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Andrew Loewi, Deputy Dist. Atty., Denver, for plaintiff-appellee.

Daniel J. Sears, Englewood, for defendant-appellant.

BERMAN, Judge.

Defendant, Richard G. Heller, appeals his conviction by a jury of four counts of securities fraud. We affirm.

"Each Count charges a separate and distinct offense and the evidence and the law applicable to each Count should be considered separately, uninfluenced by your decision as to any other Count. The fact that you may find a Defendant guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense charged against that Defendant or any other Defendant."

Hence, the "strong presumption" that the jury followed those instructions is applicable. Defendant has failed to rebut that presumption. The defendant refers to no evidence whatsoever which "is so inherently prejudicial that the jury could not have limited its use to its proper purpose." *See People v. Gonzales, supra.* Moreover, the fact that the jury found the defendant guilty of four counts, but not guilty of two of the counts which were submitted to it, further bolsters the presumption that the jury was capable of separating, and in fact did separate, the various counts at issue in his trial. Under the circumstances, we conclude the trial court did not err in denying defendant's motion to sever his trial from that of his co-defendants.

## II.

■ Defendant's second contention is that the trial court committed reversible error by denying his motion to compel election between prosecuting count 1 and prosecuting the remaining seven counts of the indictment. Specifically, defendant argues that the evidence relied upon to prove count 1 was identical to the evidence proving the remaining counts against defendant and that, therefore, count 1 was "multiplicitous" with the remaining counts. We disagree.

" 'Multiciplicity' is the charging of the same offense in two or more counts of an indictment." *United States v. Stanfa,* 685 F.2d 85 (3rd Cir.1982). Here, count 1 alleges a violation of § 11–51–123(1)(c), C.R.S. (1983 Cum.Supp.), whereas the remaining counts allege violations of § 11–51–123(1)(b), C.R.S. (1983 Cum.Supp.). Count 1 alleges that defendant committed the prohibited practice of engaging in any "act" or "course of business which operates or would operate as a fraud or deceit upon any person," while the latter counts allege that defendant committed the prohibited practice of making an untrue statement or omission of a material fact. Hence, although these counts may have arisen from the same transaction or series of transactions, they are distinct offenses requiring proof of different elements. That is, a person may engage in an act, practice, or course of business which would operate as a fraud or deceit upon a person without personally making any untrue statement or omission of material fact to that person.

■ Furthermore, even if two or more offenses charged are supported by identical evidence, the pertinent statute, § 18–1–408(3), C.R.S. (1978 Repl.Vol. 8) provides that the court *"may* require the State, at the conclusion of all the evidence, to elect the count upon which the issue shall be tried," (emphasis added), but the court is not legally *bound* to require that such an election be made. Rather, the only obligation upon the court "[i]f more than one guilty verdict is returned as to any defendant in a prosecution where multiple counts are tried as required by [§ 18–1–408(2), C.R.S. (1978 Repl.Vol. 8) is that] the sentences imposed must run concurrently." Section 18–1–408(3), C.R.S. (1978 Repl.Vol. 8).

Here, the defendant was sentenced concurrently on all counts of which he was convicted. Hence, there can be no prejudicial error. *See Sanders v. People,* 109 Colo. 243, 125 P.2d 154 (1942).

## III.

Defendant's third contention is that the indictment failed to provide adequate notice of the specific charges against which he was to defend. Again, we disagree.

■ As defendant concedes, the granting or denial of a bill of particulars is within the sound discretion of the trial court. *People v. District Court,* 198 Colo.

501, 603 P.2d 127 (1979). Here, that discretion was not abused.

■ Defendant focuses his complaint of lack of specificity of the indictment on five counts. However, of all these counts, defendant was convicted of only one—count 4. Hence, no prejudice could have inured to defendant from any lack of specificity of the other counts in the indictment and we need not address this issue relative thereto.

A mere glance at the indictment reveals that each of the counts, including count 4 which is at issue here, was pleaded with great specificity. Each count delineated the names of the defrauded investors; the alleged untrue statements of material fact, and, in the case of count 4, the name of the defendant who allegedly uttered such statements; the dates when the misstatements were allegedly uttered; and the alleged omissions of material fact.

■ An indictment is sufficient so long as it is not so indefinite in its statement of a particular charge that it fails to afford defendant a fair opportunity to procure witnesses and prepare for trial. *People v. District Court, supra; see also* Crim.P. 7. Here, defendant does not claim that he was prejudicially surprised or that he was unable to procure witnesses or prepare for trial because of any alleged deficiency in the indictment or because of the trial court's denial of his motion for a bill of particulars. Therefore, the trial court did not err in denying his motion.

## IV.

Defendant next contends that the trial court erred in restricting his efforts to lay a sufficient foundation to support his motion for a change of venue by: (1) allowing only 40 minutes for voir dire, (2) allowing only ten peremptory challenges, and (3) refusing to examine potential jurors further in chambers. We perceive no error.

### A.

■ The purpose of voir dire is to determine whether any prospective jurors are possessed of beliefs which would cause them to be biased in such a manner as to prevent defendant from receiving a fair trial. *People v. Mackey,* 185 Colo. 24, 521 P.2d 910 (1974). However, the right to voir dire is not without limitations. Crim.P. 24(a)(2) provides in pertinent part:

"In order to eliminate undue delay, the judge may reasonably limit the time available to the parties or their counsel for voir dire examination."

■ Here, it appears from the record that, although the defendants were allowed collectively only one hour to ask questions of prospective jurors, the court had conducted rather extensive voir dire prior to questioning by the attorneys. Defendant does not deny that the entire voir dire process actually consumed about six hours of court time before the jury was sworn. We conclude that, when considered in its entirety, the voir dire of jurors at defendant's trial was conducted in a manner "facilitat[ing] an intelligent exercise of challenges for cause and peremptory challenges." *See* Crim.P. 24(a)(1). Consequently, the time limitations imposed by the trial court here were not unreasonable.

### B.

■ Defendant's second argument is that the trial court abused its discretion under Crim.P. 24(d)(3) in failing to allow extra peremptory challenges. Crim.P. 24(d)(3) provides:

"For good cause shown, the court at any time *may* add peremptory challenges to either or both sides." (emphasis added)

Even if a defendant demonstrates "good cause," the trial court is permitted, but is not required to allow extra peremptory challenges.

### C.

■ We also disagree with defendant's assertion that pre-trial publicity mandated either additional peremptory challenges or further *in camera* voir dire and that, without those additional challenges and proceedings, defendant was denied his right to a fair trial.

"Where a defendant has not demonstrated the existence of massive, pervasive, and prejudicial publicity, which would create a presumption that he was denied a fair trial ... he must establish the denial of a fair trial based upon a nexus between extensive pretrial publicity and the jury panel." *People v. Botham,* 629 P.2d 589 (Colo.1981).

Here, defendant does not deny that he has failed to demonstrate the type of massive, pervasive, prejudicial publicity which would give rise to a presumption that his trial was unfair. He does not refute the fact that the volume of newspaper coverage consisted of only 15 accounts, none of which mentioned defendant in a headline or even in the first paragraph of a story. Further, defendant does not contest the fact that his photograph appeared only once in the newspaper and that no articles editorialized on the subject of defendant's guilt or innocence.

Even in *People v. Botham, supra,* where the community was "saturated" with 100 articles detailing and editorializing upon the facts of the case, our Supreme Court declined to *presume* the denial of a fair trial from those facts alone. Therefore, here we must, similarly, refrain from engaging in such a presumption on facts which are pale by comparison to those in *Botham.*

■ Defendant has also failed to establish the denial of a fair trial based upon any nexus between extensive pre-trial publicity and the jury panel. In *Botham,* the defendant successfully established such a nexus on appeal by demonstrating that over 70% of the veniremen had been exposed to pre-trial publicity, that 63% of the panel were inclined to believe in the defendant's guilt, and that 7 of the 14 jurors selected to hear the case believed that the defendant was guilty. Here, however, defendant's strongest allegation against the jurors actually impaneled relates not to any specific knowledge that any juror possessed regarding *defendant,* nor to any opinion which any juror had formed as to *defendant's* guilt or innocence, but rather, he alleges that publicity concerning his two

co-defendants might *indirectly* have affected his right to an impartial jury.

In *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983), our Supreme Court declared that:

"The mere existence of extensive publicity, by itself, does not trigger a due process entitlement to a change of venue."

As the court had earlier observed in *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976):

"The constitutional standard of fairness requires that a defendant have a panel of impartial and unbiased jurors. However, an important criminal case can be expected to generate much public interest and usually the best qualified jurors will have heard or read something about the case. To hold that jurors can have no familiarity through the news media with the facts of the case is to establish an impossible standard in a nation that nurtures freedom of the press. It is therefore sufficient if jurors can lay aside the information and opinions they have received through pretrial publicity...."

In sum, a juror who merely acknowledges his familiarity, through the media, with the business entity associated with the fraud, or with defendant's co-defendants, is not the equivalent of a juror who, through the media, is acquainted with and has formed prejudicial conclusions about the defendant himself and his guilt or innocence. Inasmuch as there is no indication whatsoever from the record that any juror sitting on defendant's case was unable to lay aside any tangential information he had received through pretrial publicity, the trial court did not err in refusing to allow defendant extra peremptory challenges and in denying defendant's motion to conduct further *in camera* examination of the potential jurors.

## V.

Defendant's fifth contention is that the trial court erred in its instructions to the jury on the definition of "knowingly" and on the issue of the availability of good faith

as a defense to defendant's securities violations. We do not agree.

### A.

■ The instruction given to the jury on the issue of *mens rea* read as follows:

"The culpable mental state in the case of Fraudulent and Other Prohibited Practices in the Sale of Securities is 'knowingly' which is synonymous with 'willfully' as these terms are explained in this instruction.

"A person acts 'knowingly' or 'willfully' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such a nature or that such circumstance exists. A person acts 'knowingly' or 'willfully' with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the results."

This instruction tracks precisely the statutory definition of the term "knowingly" as set out in § 18–1–501(6), C.R.S. (1978 Repl. Vol. 8).

Moreover, the above instruction complies with the holding in *People v. Blair*, 195 Colo. 462, 579 P.2d 1133 (1978). Hence, the trial court did not err in giving the instruction defining "knowingly."

### B.

■ Our Supreme Court's holding in *People v. Blair, supra*, is also dispositive of defendant's argument that the court's instruction on the unavailability of good faith as a defense to securities fraud was erroneous. In *Blair*, responding to the contention that good faith and honest purpose on the part of the defendant is "an absolute defense as to charges of securities fraud," the court stated:

"There is no requirement that the defendant purposely intended to violate the law in order to be held criminally liable.... Good faith is not a proper defense in this case."

Hence, the instruction given here echoing this ruling in *Blair* was entirely proper.

### VI.

■ Defendant's final contention is that the trial court committed reversible error in refusing to afford him an evidentiary hearing on jury misconduct based on allegations that a few of the jurors may have learned during deliberations, through the media, of co-defendant Swanson's guilty plea to securities fraud or of the capture in Florida of fugitive co-defendant Riley, in violation of the court's orders not to examine any external information or speak between themselves or with others regarding the case. Once again, we disagree.

"[I]n order to constitute grounds for setting aside a verdict because of any unauthorized or improper communication with the jury, it is incumbent upon defendant to show that he was prejudiced thereby.... [D]etermination of whether prejudice has occurred is a matter within the sound discretion of the trial court." *Torres v. People*, 149 Colo. 314, 369 P.2d 80 (1962).

Defendant's reliance upon *Whitten v. Allstate Insurance Co.*, 447 So.2d 655 (Ala. 1984) is misplaced because, in that case, the affidavits contained evidence, that some of the jurors had undertaken unauthorized viewing of the accident scene and had changed their decisions about the case as a result of their familiarity with the extraneous matter. Here, in contrast, defendant failed to demonstrate that any extraneous influence came to bear upon the jury or that he was prejudiced thereby.

The affidavit attached to defendant's motion for an evidentiary hearing comprises the only evidence defendant offered of the jury misconduct he alleged. Although the affidavit reveals that five of the jurors stated that they learned of Swanson's plea or of Riley's capture, each of them stated further that they learned of such facts only "at the conclusion of their deliberations" or "after their deliberations were completed."

"Something more than an unverified conjecture is necessary to justify the grant of a new trial where only potentially suspicious circumstances are shown."

*United States v. Jones,* 707 F.2d 1169 (10th Cir.1983).

Accordingly, here, the trial court was justified in denying defendant's motion for an evidentiary hearing. To allow such a hearing merely on the basis of a defendant's "unverified conjectures" would, in nearly every case, permit post-verdict fishing expeditions into jurors' privacy. We cannot countenance such a result.

Judgment affirmed.

SMITH and VAN CISE, JJ., concur.