**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**James BOLTON, Defendant–Appellant.**

**No. 92CA0162.**

Colorado Court of Appeals,
Div. II.

July 1, 1993.

Rehearing Denied Aug. 26, 1993.

314

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Koehler,

Asst. Atty. Gen., Denver, for plaintiff-appellee.

John R. Olsen, Boulder, for defendant-appellant.

Opinion by Judge PIERCE.

Defendant, James P. Bolton, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of three counts each of sexual assault on a child and second degree burglary, and one count of second degree kidnapping, stemming from separate incidents during 1990 involving three young girls. We affirm.

## I.

On appeal, defendant first contends that the trial court erred in failing to follow the procedural safeguards required by § 13–25–129, C.R.S. (1987 Repl.Vol. 6A), when it permitted the prosecution to present hearsay statements of the victims. Specifically, he contends that the trial court erred by failing to hold a hearing to determine the reliability of the victim's statements and to give the jury cautionary instructions regarding the statements. He concludes that, because of the prejudicial nature of the hearsay statements, these errors mandate reversal. We disagree.

■ Section 13–25–129 creates an exception to the general exclusion of hearsay for the out-of-court statement of a child describing acts of sexual contact performed "with, by, on, or in the presence of the child declarant." Under the statute, if child hearsay is admitted under this statute, the prosecution must provide the defense with prior notice of its intent to introduce such statements and the trial court must make specific findings of fact concerning the reliability of the statements and provide the jury with cautionary instructions.

■ In *People v. Bolton*, 859 P.2d 303 (Colo.App.1993) (*Bolton I*), we held that:

Section 13–25–129 is controlling only to child hearsay which is not otherwise admissible by a statute or court rule which provides an exception to the objection of

hearsay. Section 13–25–129(1), C.R.S. (1987 Repl. Vol. 6A). If the child's hearsay statement is *specifically admissible* under another statute or court rule which provides an exception to the hearsay rule, § 13–25–129 is not applicable. *People v. Diefenderfer*, 784 P.2d 741 (Colo.1989); § 13–25–129(1).

. . . .

However, if a child's hearsay statement would be admissible only under § 13–25–129 or the residual hearsay exceptions of CRE 803(24) or CRE 804(b)(5), our supreme court has recognized that the more specific statute, § 13–25–129, is controlling, as the residual exceptions contain different requirements for the admission of hearsay. *See People v. Bowers*, 801 P.2d 511 (Colo. 1990).

Thus, § 13–25–129 is not controlling if the prosecution seeks to introduce child hearsay under another specific exception to the hearsay rule. *See People v. Galloway*, 726 P.2d 249 (Colo.App.1986) (in prosecution for sexual assault on a child, victim's statements to his mother were admissible hearsay under *either* CRE 803(2) *or* § 13–25–129); *cf. People v. Jones*, 843 P.2d 67 (Colo. App.1992) and *People v. McClure*, 779 P.2d 864 (Colo.1989) (procedural safeguards must be followed if prosecutors seek to admit child hearsay only under § 13–25–129 and not under any other statutory exception to the hearsay rule).

■ Here, prior to trial, prosecutors initially filed a motion *in limine* to admit hearsay statements of the victims under § 13–25–129 and CRE 803(24). However, before the trial court could rule on the motion, a prosecutor stated that "the People will withdraw any child hearsay statements, so that motion does not need to be addressed."

Subsequently, prosecutors indicated, without objection by defendant, that statements of the victims might be admitted under another exception to the hearsay rule.

Therefore, because it is apparent from our reading of the record that the prosecution did not seek to admit the statements under § 13–25–129, the trial court was not required to follow the procedural requirements of that statute.

■ We reject defendant's contention that the prosecutor's statement above, standing alone, would, under the doctrine of judicial estoppel, bar the admission of any such statements. The applicability of judicial estoppel was not raised before the trial court. Therefore, we decline to address this issue for the first time on appeal. *See People v. Chetelat*, 833 P.2d 771 (Colo. App.1991).

## II.

Defendant next argues that the trial court erred in admitting hearsay statements of the victims offered through the victims' parents and investigating officers. The People contend that the statements were properly admitted as "excited utterances" under CRE 803(2). We agree with the People.

An "excited utterance" is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Cheney v. Hailey*, 686 P.2d 808 (Colo.App.1984); CRE 803(2).

■ Because the trial court is in the best position to consider the effect of the startling event on the declarant, it is afforded wide discretion in determining whether a statement is admissible under the "excited utterance" exception. *People in Interest of O.E.P.*, 654 P.2d 312 (Colo.1982).

■ A sexual assault may constitute a sufficiently startling event to admit hearsay statements of a child-victim. *See People v. Galloway*, 726 P.2d 249 (Colo.App. 1986); *People v. Sandoval*, 709 P.2d 90 (Colo.App.1985). Therefore, in considering the admissibility of the victims' hearsay statements here, we focus our inquiry on whether the statement was a spontaneous reaction to the event or a result of reflec-

tive thought. *See W.C.L. v. People*, 685 P.2d 176 (Colo.1984).

## A.

■ At trial, the grandmother of the first victim testified, over defendant's continuing objection, as to statements made by the victim on the afternoon of the alleged assault. According to the grandmother, the victim stated that a man had grabbed her as she was attempting to enter her home and pulled her into a neighboring apartment. The victim had stated that the man had sexually assaulted her in the basement of the apartment and that he might still be in the apartment. In addition, the victim described her assailant as either a "dark-skinned white man or a light skinned black man."

The record shows that the victim made these statements immediately after the grandmother arrived home from work, within, at most, a few hours of the assault. The grandmother also stated that the victim was "crying and incoherent" as she related what had happened.

In addition, an investigating officer testified at trial as to the victim's description of her assailant and the details of the assault. The officer testified that he had interviewed the victim only a few hours after the assault and that she was "hysterical" during the interview.

Under these circumstances, we conclude that the hearsay statements of the first victim were properly admissible as excited utterances. Each of the statements was made within a short time of the assault, and the testimony of the grandmother and the investigating officer indicate that the victim was still under the stress of the assault when she made the statements. Therefore, the trial court did not err in admitting the statements. *See People v. Sandoval, supra.*

Moreover, the hearsay statements were cumulative with the victim's in-court testimony during which she described her assailant and the details of the assault. Thus, even if we assume the victim's statements to her grandmother and the investi-

gating officer were inadmissible, the trial court's error, if any, would be harmless. *See Williams v. People*, 724 P.2d 1279 (Colo.1986).

## B.

■ Defendant also objected to the testimony of the mother of the second victim at trial. She testified that early in the morning on the date of the alleged assault, her child told her that a man had entered her room during the night and sexually assaulted her. In addition, the mother testified that her child had stated that the man had taken her underwear and had threatened to come back and hurt her family if she told anyone what had happened.

An investigating police officer who interviewed the second victim on that same morning, essentially confirmed the mother's testimony.

However, there is no evidence in the record as to the victim's state of mind when the statements were made. Thus, we cannot determine whether the statements were properly admissible as "excited utterances." *See W.C.L. v. People, supra.*

Nevertheless, the hearsay statements admitted through the testimony of the mother and the investigating officer were cumulative with the second victim's own in-court testimony and the police report prepared by the investigating officer which was offered into evidence by the defense. Therefore, the admission of the victim's hearsay, if error, was harmless. *See Williams v. People, supra.*

In addition, although neither the mother nor the investigating officer testified on direct examination as to the second victim's description of her assailant, defense counsel interrogated both witnesses extensively on that issue during cross-examination. Thus, because defendant injected the second victim's identification of her assailant into the proceedings, he may not now assert error based upon the admission of those statements at trial. *See People v. Valdez*, 725 P.2d 29 (Colo.App.1986).

## C.

■ The mother of the third victim also testified at trial, over defendant's objection, that, in the early morning hours of August 17, 1990, her daughter told her that a man had broken into the house that night, assaulted her, and taken her underwear. The mother further testified that her daughter was "standing there with her hands in her mouth crying" as she made these statements to her.

Again, a police officer who interviewed the victim that same morning reported essentially the same statements.

Under such circumstances, the trial court did not err in admitting the challenged statements into evidence. *See People v. Sandoval, supra.*

Moreover, because defendant offered into evidence the police report of the investigating officer which contained numerous hearsay statements of the third victim, defendant may not now assert error based upon the admission of those statements. *See People v. Valdez, supra.*

## D.

Because each of the remaining hearsay statements admitted at trial was cumulative with evidence that was properly admitted, we conclude that the trial court's error in admitting them, if any, was harmless. *See Williams v. People, supra.*

## III.

Next, defendant contends that the trial court violated his right to self-representation by issuing abusive rulings which were intended to coerce him into accepting counsel at a pre-trial hearing. Because these rulings allegedly denied him "every fair opportunity to defend" himself, he contends that he was forced to retract his previous request to proceed *pro se.* We perceive no error in the trial court's rulings and, therefore, reject defendant's contention.

■ A criminal defendant is constitutionally guaranteed the right to self-representation. *Faretta v. California*, 422 U.S.

806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *People v. Romero*, 694 P.2d 1256 (Colo. 1985); Colo. Const. art. II, § 16.

▮▮▮▮ However, by electing to proceed *pro se*, a defendant is subject to the same rules, procedures, and substantive law as a licensed attorney. *People v. Romero, supra*. Moreover, a trial court is not obliged to tolerate disruption or intemperate conduct by a person proceeding *pro se*. *People v. Mogul*, 812 P.2d 705 (Colo. App.1991).

▮▮▮ Here, at defendant's request, the trial court permitted defendant to proceed *pro se* after a lengthy advisement as to the nature of the proceedings and the risks of self-representation.

Immediately thereafter, defendant argued that the prosecution could not join the three sexual assaults in one prosecution and requested that he be permitted to call witnesses concerning his motion for severance of counts and the prosecution's motion to admit similar transactions evidence. However, because defendant's argument was not dependent upon factual dissimilarities between the counts, the trial court refused to permit defendant to call witnesses and denied his motion to sever as a matter of law.

Subsequently, defendant sought to address several issues which his defense counsel had not raised, including "several motions and also the renewal of the motions that were denied because of substantially new evidence." The trial court indicated that it had no motions before it and asked the defendant to describe the issues.

The court then temporarily halted the proceedings to address another pending matter, following which defendant repeatedly interrupted the court, insisting that his motions be addressed immediately, stating: "Well, I think, Your Honor, that this matter precedes the resolution of those other issues...." Defendant further stated that he had a motion to require the judge to recuse, but when he failed to produce any supporting affidavits, the trial court denied the motion.

Following this exchange, defendant became uncooperative during the trial court's advisement concerning his right to testify at trial, stating:

> I don't understand how I can be denied justice by not being allowed to enter the motions that I have asked to introduce and how I can be denied every fair opportunity to defend myself and enter my motions that are beneficial to me and able to defend myself against some motions that the prosecution is attempting to bring into this trial, including mention of my past criminal record.

Defendant then indicated that he no longer desired to proceed *pro se* and was permitted representation by counsel.

Each of the trial court's rulings was properly grounded in fact and law, and there is no evidence that the trial court sought to interfere with the defendant's right to self-representation. Therefore, we find no grounds for reversal.

## IV.

Defendant next contends that the trial court erred in failing to consider his motion to dismiss counsel or to inquire as to the reasons for his dissatisfaction with his court-appointed counsel. We disagree.

▮▮▮▮ A criminal defendant is guaranteed the right to reasonably effective assistance of counsel. *People v. Norman*, 703 P.2d 1261 (Colo.1985); Colo. Const. art. II, § 16. However, the burden of establishing ineffectiveness of the assistance of counsel lies with the defendant, and a conviction will not be set aside unless defendant can show a denial of fundamental fairness. *See People v. Benney*, 757 P.2d 1078 (Colo. App.1987).

▮▮ On appeal, defendant relies solely on the failure of the trial court to hold a hearing on his motion; he does not contend that he received ineffective representation at trial, nor has he asserted that he was denied fundamental fairness. Therefore, the trial court's error, if any, was harmless.

## V.

Next, defendant contends that the trial court erred in admitting evidence of a line-up identification of defendant. In their statements to police, each of the victims described her assailant as a person of mixed parentage, either as a light-skinned black man or a dark-skinned white man. He contends that, in the photographic and in-person line-ups, defendant was the only person of mixed parentage and the only light-skinned black man, causing him to "leap out of the line-up." Thus, he argues, the line-up was impermissibly suggestive and the trial court erred in failing to exclude it from evidence. We disagree.

An out-of-court identification is impermissibly suggestive if, based upon the totality of the circumstances, there is a substantial likelihood of misidentification. *People v. Walford*, 716 P.2d 137 (Colo.App. 1985). If the line-up procedures are such that a defendant "fairly leaps out" as one who is different from the others, the identification may be so tainted as to require exclusion. *See United States v. Sanders*, 479 F.2d 1193, 1197 (D.C.Cir.1973).

In considering defendant's motion to suppress the victims' out-of-court identifications, the trial court reviewed both a videotape of the in-person line-up and the photographic line-up. Although defendant was the only person in the line-up of mixed black and white parentage, the trial court concluded that the complexions of all the men involved fell within the range described by the victims. In addition, the officer who conducted the line-up later testified that, in conducting the line-up, he was unable to locate other men of mixed black and white parentage, so he used men meeting the general descriptions provided by the victims. Based on these facts, the trial court concluded that the line-up was not impermissibly suggestive and, therefore, refused to exclude it from evidence at trial.

The state cannot be required to provide exact replicas of the defendant for a line-up; a line-up is proper if the persons are reasonably matched by race, approximate age, and other physical characteristics. *See People v. Borrego*, 668 P.2d 21 (Colo.App.1983).

Here, the record supports the trial court's conclusion that each of the men fit within the general descriptions provided by the victims. Therefore, we conclude that the trial court did not err in admitting evidence of the line-up identification. *See People v. Walford, supra.*

## VI.

Next, defendant contends that the trial court erred in permitting the jury to consider evidence of each count, and of a prior conviction for sexual assault on a child, as "similar transactions" evidence supporting each of the remaining counts. He concludes that because of the prejudicial nature of the evidence of each criminal episode, the trial court should have severed the counts against him. We disagree.

## A.

Evidence of similar transactions may be admitted in a sexual assault prosecution under § 16–10–301(1), C.R.S. (1992 Cum.Supp.) and CRE 404(b), provided that it is offered for the limited purpose of establishing a common plan, scheme, design, identity, *modus operandi*, motive, guilty knowledge, or intent. *People v. McKibben*, 862 P.2d 991 (Colo.App.1993).

In determining whether to admit evidence of similar transactions in a sexual assault case, the trial court must consider the remoteness of the prior acts, the strength of the evidence of those acts, the similarities between the acts, the need for the evidence and efficacy of alternative proof, and the degree to which the evidence will rouse the jury to overmastering hostility. *Adrian v. People*, 770 P.2d 1243 (Colo. 1989).

It is not essential that each of the prior acts replicate in all respects the commission of the charged offense; rather, it is sufficient that the evidence of the other acts and the offense charged, considered in

its totality, manifests significant distinctive features making it more likely than not that defendant committed the charged offense. *See People v. Garner*, 806 P.2d 366 (Colo.1991).

▪ The trial court enjoys substantial discretion in determining the admissibility of similar transactions evidence, and its rulings thereon will not be disturbed absent a clear abuse of that discretion. *People v. Czemerynski*, 786 P.2d 1100 (Colo. 1990).

▪ Here, the prosecution offered evidence of each count in support of the remaining counts in order to establish the identity of the defendant through a common *modus operandi*.

In each of the charged offenses, and in the prior conviction, the victim of the assault was a girl in her early teens or preteen years. Each of the victims was assaulted at or near her home and, in each case, the perpetrator had unlawfully entered the home or building where the assault occurred. All of the victims lived in the same general neighborhood and, in the three charged offenses, defendant was reported to have told the victims that he had been watching them.

In each of the charged offenses and the prior conviction, the perpetrator fondled the victims' breasts and genitalia but did not engage in anal or vaginal intercourse. In the three charged offenses, defendant was reported to have forced the victim to fondle his genitals, and, in one of the charged offenses and his prior conviction, he allegedly forced the victims to engage in oral sex. Further, in two of the charged offenses and defendant's prior conviction, the perpetrator took the victim's underwear as a "souvenir."

In each of the charged offenses and in the prior conviction, the perpetrator conversed with the victims and stated that he would return to "marry" them. In addition, the perpetrator told each of the victims his name, although he did not always use the same name. Finally, each of the victims identified defendant as her assailant.

Based upon these facts, we conclude that each of the charged offenses and the prior conviction were sufficiently similar as to be probative on the issue of identity. In particular, the type of sexual contact involved, the common thread of burglary to accomplish the assault, and the statement that he would return to "marry" the victims make the offenses sufficiently distinctive as to make it more likely than not that defendant committed each of the facts. *See People v. Garner, supra.* Therefore, the trial court did not abuse its discretion permitting the jury to consider evidence of each count as "similar transactions" evidence in support of the remaining counts.

#### B.

▪ If it appears that a defendant is prejudiced by a joinder of offenses in any indictment or information, the trial court may order separate trials. *People v. Early*, 692 P.2d 1116 (Colo.App.1984); Crim.P. 14.

▪ The decision to sever a trial is committed to the sound discretion of the trial court, and its ruling will not be disturbed absent a manifest abuse of that discretion. *People v. Early, supra.*

Because the evidence from each of the counts was properly admissible with respect to the other counts as similar transactions, no unfair prejudice resulted to the defendant from a joint trial of the offenses. Therefore, the trial court did not abuse its discretion in denying defendant's motion to sever.

#### VII.

Defendant next contends that the trial court erred in refusing to permit him to enter a plea of not guilty by reason of insanity, or to present a defense of impaired mental condition. We disagree.

▪ The defense of not guilty by reason of insanity must be raised by a specific plea at the time of arraignment. However, for good cause shown, the trial court may, in its discretion, permit the plea

to be entered at any time prior to trial. *People v. Low*, 732 P.2d 622 (Colo.1987); § 16–8–103(1), C.R.S. (1986 Repl.Vol. 8A).

 The affirmative defense of impaired mental condition is separate and distinct from the defense of insanity; its sole effect is to negate the existence of an element of the crime charged. *Hendershott v. People*, 653 P.2d 385 (Colo.1982), *cert. denied*, 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983). However, if a defendant intends to raise the defense of impaired mental condition at trial, he must also specially plead the defense at arraignment. *People v. Low, supra;* § 16–8–103.5, C.R.S. (1986 Repl.Vol. 8A).

 If a defendant fails specifically to plead not guilty by reason of insanity or impaired mental condition at arraignment, or is not permitted to do so by the court prior to trial, evidence of insanity or impaired mental condition is irrelevant and inadmissible at trial. *See People v. Low, supra.*

 Here, defendant did not plead not guilty by reason of insanity or impaired mental condition at his arraignment. In fact, defendant did not raise the issue until several months later, at a joint competency hearing held in conjunction with another pending prosecution against him, *i.e., Bolton I, supra.* Moreover, defendant failed to meet his burden of establishing "good cause" for the plea of not guilty by reason of insanity or impaired mental condition.

After defendant indicated his intent to raise the defenses of insanity and impaired mental condition, the trial court advised defendant as to the pleas of not guilty by reason of insanity and impaired mental condition and appointed a psychiatrist to examine him.

Following the psychiatric examination, the court-appointed psychiatrist concluded that there was no evidence that defendant was insane at the time of the alleged offenses. However, at defendant's request, the trial court appointed a second psychiatrist to examine him.

At a subsequent hearing, the second psychiatrist stated that she was unable to conclude her evaluation because defendant had refused to discuss his mental state during the alleged criminal episodes. Thereafter, defense counsel in the other pending prosecution, *Bolton I*, indicated that the issues of competency and insanity would no longer be pursued. Defendant's counsel in the case at issue here concurred in the decision to waive the competency issue; however, it is unclear whether he also waived the issue of insanity. No further request for the insanity plea was raised by defendant.

Under these circumstances, the trial court did not abuse its discretion in refusing to permit him to present evidence of his mental condition at trial.

### VIII.

Defendant also contends that the trial court erred in refusing to grant a continuance of the sentencing hearing in order to permit him to obtain further evidence of his mental state. Defendant contends that, as a result of this ruling, he was denied the opportunity to present mitigation evidence at the sentencing hearing. We are not persuaded.

 A motion for a continuance is addressed to the sound discretion of the trial court, and its ruling thereon will not be disturbed absent a clear abuse of that discretion. *People v. Hampton*, 758 P.2d 1344 (Colo.1988). In determining whether the trial court abused its discretion, we must examine the totality of the circumstances. *People in Interest of D.J.P.*, 785 P.2d 129 (Colo.1990).

 Here, defense counsel moved to have defendant sentenced under the Sexual Offender's Act, § 16–13–201, et seq., C.R.S. (1986 Repl.Vol. 8A), and requested additional time in which to obtain evidence from the second court-appointed psychiatrist who had examined defendant. At a hearing on the motion, defense counsel, in essence, stated that defendant would now cooperate with the psychiatrist and that counsel considered defendant to be suffering from a severe mental impairment and

not to be competent to understand the proceedings.

The trial court, finding that the issues of competence and impaired mental condition had previously been resolved, denied the motion.

Defendant previously had been examined by a court-appointed psychiatrist who found no evidence of impaired mental condition. There is no indication that a different conclusion would have been reached if defendant had been reexamined. Therefore, considering the totality of the circumstances here, we find no abuse of discretion in the trial court's refusal to grant a continuance. *See People in Interest of D.J.P.,* *supra.*

## IX.

Finally, defendant contends that the trial court abused its discretion in sentencing him. He contends that the court made inadequate findings to support the aggravated sentence and that it ignored mitigating factors raised by the defense. Further, he contends that a proportionality review is required because of the duration of the sentence, which is, in effect, a life sentence without parole. We perceive no error.

### A.

The determination of an appropriate sentence lies within the sound discretion of the trial court, and, because it is more familiar with the defendant and the facts of the case, it enjoys wide latitude in the exercise of that discretion. *People v. Vecchio,* 819 P.2d 533 (Colo.App.1991).

In sentencing a defendant, the trial court may consider the nature of the offense, the defendant's character, and the needs of society. *People v. Huggins,* 825 P.2d 1024 (Colo.App.1991). In addition, the trial court may consider prior criminal conduct of the defendant. *People v. McGregor,* 757 P.2d 1082 (Colo.App.1987). The trial court must then impose a definite sentence within the presumptive range unless it concludes that extraordinary mitigating or aggravating factors are present. *Peo-*

*ple v. Clements,* 732 P.2d 1245 (Colo.App. 1986).

If the court imposes a sentence in the aggravated range, it must make specific findings in the record as to the circumstances justifying deviation from the presumptive range. *People v. Vela,* 716 P.2d 150 (Colo.App.1985).

Here, defendant was sentenced to a total of 172 years imprisonment: 32 years each on the three counts of sexual assault on a child (the maximum permitted in the aggravated range); 40 years on the count of kidnapping (more than the maximum in the presumptive range, but eight years less than the maximum in the aggravated range); eight years on one count of burglary (the maximum in the presumptive range); 12 years on a second count of burglary (the midpoint in the aggravated range for that offense); and 14 years on the third count of burglary (two years less than the maximum in the aggravated range).

In sentencing defendant, the trial court made the following findings of fact: (1) that defendant had prior convictions for the same offense; (2) that the nature of defendant's crimes did not reveal a mental impairment, but rather a disregard for the "rights and the privacy and the emotional and physical well-being of other individuals"; (3) that the crimes involved "compelling circumstances," including the fact that defendant attacked young girls, threatened them, and apparently spent "a significant amount of time stalking his victims and then planning what he [was] to inflict upon them with some degree of premeditation"; and (4) that there was no "specific evidence upon which I could even hope that the defendant is subject to some rehabilitation."

These factual findings are supported by the record and provide ample grounds for the sentence imposed. *Cf. People v. Piro,* 671 P.2d 1341 (Colo.App.1983).

### B.

In *Alvarez v. People,* 797 P.2d 37 (Colo. 1990), our supreme court held that a defendant who challenges the constitutionality of a life sentence imposed under the habitual

offender statute, § 16–13–101(2), C.R.S. (1986 Repl.Vol. 8A), is entitled to a proportionality review.

■ However, we are not aware of any Colorado authority which holds that a defendant given consecutive sentences that would exceed his anticipated life span is similarly entitled to a proportionality review.

In *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States Supreme Court adopted the doctrine of proportionality review when a life sentence was imposed under the South Dakota habitual criminal statute. In reaching its decision, the Supreme Court noted that in imposing a life sentence under the habitual criminal statute, the trial court was permitted to consider only the fact of the prior convictions, and not the details and circumstances of the prior offenses. Thus, a proportionality review of the sentence imposed was appropriate.

Here, unlike *Solem*, defendant was convicted of several counts in a single prosecution. Each count was supported by independent evidence, and thus, the trial court was able to consider the circumstances of each offense in imposing its sentence. Moreover, the sentences imposed for each count are permitted, by statute, to run consecutively, resulting in a sentence of 172 years imprisonment. *See* § 18–1–408(2), C.R.S. (1986 Repl.Vol. 8B).

Because, unlike a sentence under the habitual offender statute, the trial court was permitted to consider the circumstances of each of defendant's convictions in imposing its sentence, we decline to extend the doctrine of proportionality review to the circumstances of this case.

We have considered defendant's remaining contentions on appeal and find them to be without merit.

The judgment of the trial court is affirmed.

REED and BRIGGS, JJ., concur.