**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Adriel BORGHESI, Defendant–Appellant.**

**No. 99CA1358.**

Colorado Court of Appeals.

March 1, 2001.

As Modified on Denial of Rehearing June 14, 2001.

Certiorari Granted Jan. 22, 2002.*

Ken Salazar, Attorney General, Kathleen M. Byrne, Special Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Adriel Borghesi, appeals the judgment of conviction entered upon jury verdicts finding him guilty of three counts of aggravated robbery. We affirm in part and reverse defendant's conviction and sentence for one of the counts.

Late in the evening on September 13, 1997, an adult bookstore was robbed. At the time, two clerks and one customer were in the bookstore. The two clerks were in the process of changing shifts, and both clerks were standing behind the counter counting money. The robber approached and threatened the two clerks, one of whom jumped over the

counter as if to leave the bookstore. The robber then pulled out a hatchet, swung it around, and threatened to harm the second clerk if the first clerk left the store. The second clerk gave the robber the money from the cash register. The customer had an unobstructed view of the robbery. The first clerk then escaped to a neighboring business and called the police. The first clerk and the customer gave generally similar descriptions of the robber to the police.

Six days later, late at night, the bookstore was again robbed by a man wielding a hatchet. This time, the only person in the bookstore was the second clerk, who engaged the robber in an altercation, sustained a cut on one hand, and ultimately gave the robber the money from the cash register. The second clerk's description of the robber was similar to the two descriptions given by the first clerk and the customer following the first robbery. He also stated that he thought the robber in the second robbery was the same person who robbed the bookstore on the earlier occasion.

One year later, all three witnesses were shown a photographic lineup containing defendant's photograph. The first clerk and the customer in the first robbery equivocally identified defendant. The first clerk positively identified defendant at trial as the robber. The customer did not identify defendant at trial.

The second clerk tentatively identified defendant in the photographic lineup, but later testified that his choice was influenced by the detective conducting the photographic lineup. The second clerk was also invited by the prosecutor's office to walk into the courtroom during defendant's preliminary hearing to see if he could identify anyone in the courtroom, whereupon he identified defendant as the robber. In addition, the second clerk identified defendant as the robber at the hearing on defendant's motion to suppress both the in-court and out-of-court identifications.

On two occasions prior to trial, however, the second clerk indicated he was unsure of his identification of defendant. The second clerk was not asked to, and did not, identify defendant at trial, and he testified that he

was a poor witness. However, his pretrial identifications were admitted into evidence at trial.

The bookstore used a video surveillance system, which recorded both robberies. The videotapes, as well as several still photographs taken from these videotapes, were admitted into evidence at trial. An investigating officer testified that he recognized defendant as the robber on both of the videotapes.

Defendant was charged in two informations with three counts of aggravated robbery. The first information charged defendant with two counts of aggravated robbery for the September 13, 1997, incident, one count naming the first clerk as the victim and the other count naming the second clerk as the victim. The second information charged defendant with one count of aggravated robbery for the September 19, 1997, incident and named the second clerk as the victim.

The cases were consolidated for trial, and the jury convicted defendant on all three counts. The trial court sentenced defendant to two consecutive 10–year sentences for the first robbery and to a concurrent 10–year sentence for the second robbery, all to the Department of Corrections.

I.

Defendant first asserts that the photographic lineup was impermissibly suggestive and violated his constitutional right to due process. We disagree.

■ The question whether a pretrial photographic identification procedure is impermissibly suggestive must be resolved in light of the totality of the circumstances. *People v. Monroe*, 925 P.2d 767 (Colo.1996); *People v. Bolton*, 859 P.2d 311 (Colo.App.1993).

■ To warrant suppression, a pretrial photographic lineup must be so suggestive that it makes the identification, and any subsequent identification, unreliable as a matter of law. *People v. Monroe, supra; People v. Harris*, 914 P.2d 434 (Colo.App.1995).

■ A photographic array is not unduly suggestive "if the photos are matched by

race, approximate age, hair type, and a number of other characteristics." *People v. Harris, supra*, 914 P.2d at 437. Exact replicas of a suspect's physiognomy are not required. *See People v. Bolton, supra.*

■ If a pretrial identification is not impermissibly suggestive as a matter of law, but is nonetheless tainted with some degree of untrustworthiness, it is admissible, and the weight it should be accorded is a matter for the jury. Juries can intelligently measure the weight to be given identification testimony that has some questionable feature. *People v. Monroe, supra.*

■ Moreover, if an out-of-court identification procedure is not unconstitutionally suggestive, the issue of whether an in-court identification has an independent source need not be addressed. *See People v. Mack*, 638 P.2d 257 (Colo.1981).

The pretrial photographic lineup in this case contains six color photographs. All the men depicted, including defendant, are light-skinned Caucasian males, about the same age and weight, with short to extremely short hair. The physiognomy of each male pictured is unique. Defendant's image, however, stands out because his skin tone is considerably lighter than that of the others, due to the lighting or overexposure of the film. The other photographs are all strikingly similar to one another in terms of lighting, exposure, and skin tone. In addition, all the other men are squarely positioned in front of, and are looking into, the camera, whereas defendant is leaning forward with his head cocked at a slight angle.

While, when presented with the array, one's attention is immediately drawn to the photograph of defendant because of its distinctive appearance, this alone would not cause one to identify defendant as the robber. The individuals depicted in the photo array were matched in race, approximate age, hair type, weight, and a number of other characteristics.

In addition, the witnesses were unable to give a positive identification of defendant at the time the photographic lineup was presented to them. The first clerk, who identified defendant at trial and at the hearing on the motion to suppress, thought defendant's picture was the closest match and stated that he was only "70% sure" that defendant was the robber. The second clerk, who was present at both robberies but did not identify defendant at trial as the robber, identified defendant as the closest match in the photographic lineup, but later disavowed his identification to the authorities on at least two occasions. The customer picked defendant's photograph and one other photograph, but indicated that neither was identical to the robber.

■ We conclude, as did the trial court, that the photographic lineup evidence was not unreliable as a matter of law. The jury was fully capable of weighing this evidence along with other identification evidence in reaching its conclusions. Thus, we uphold the trial court's determination that the photographic array—although far from ideal—was not impermissibly suggestive. Having so held, we need not address the related issue of whether the prosecution provided an adequate independent basis for the first clerk's in-court identification of defendant.

## II.

■ Defendant next argues that the evidence was insufficient to sustain his conviction for the second robbery. More particularly, he suggests that because he was never conclusively identified at trial by the second clerk who was the only witness to the second robbery, the evidence is insufficient. We disagree.

■ When the sufficiency of evidence is challenged on appeal, the reviewing court must determine whether the evidence viewed as a whole, and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *Kogan v. People*, 756 P.2d 945 (Colo.1988). In light of this deferential standard of review, we find that the evidence was sufficient to uphold the jury's verdict.

■ Evidence is unconvincing, and therefore insufficient, if it leaves too much

room for speculation and conjecture and is equally consistent with a hypothesis of innocence as with that of guilt. *Solis v. People*, 175 Colo. 127, 485 P.2d 903 (1971). In other words, a mere modicum of relevant evidence cannot sustain a conviction beyond a reasonable doubt. *People v. Gonzales*, 666 P.2d 123 (Colo.1983).

In this case, the second clerk was the only witness to the second robbery, and his pretrial identification of defendant was equivocal at best. At the hearing on the motion to suppress, the second clerk identified defendant and stated that he thought defendant was the robber on both occasions. Unsure of his choice, the second clerk twice stated that he thought defendant might not be the robber. The second clerk was not asked to and did not identify defendant at trial. The surveillance videotape of the second robbery and still images taken from the videotape were admitted at trial. Two photographs of defendant, which were taken around the time of the robbery, were also in evidence.

Additionally, the first clerk's identification of defendant in the first robbery was circumstantial evidence implicating defendant in the second robbery because the two robberies were uniquely similar and were likely to have been committed by the same person. Moreover, the detective testified that he recognized defendant as the person pictured in the security videotapes.

It would be difficult to characterize this evidence as a mere modicum. Moreover, viewed in the aggregate, the evidence does not leave too much room for speculation or conjecture. While the second clerk who was the victim in the second robbery was less than certain in his identification of defendant and gave no in-court identification, sufficient additional evidence existed for a reasonable jury to conclude beyond a reasonable doubt that defendant was the robber in the second robbery.

We thus conclude that when viewed in the light most favorable to the People, the evidence was sufficient to support defendant's conviction for the second robbery.

III.

Defendant next contends that the first information containing two counts of aggravated robbery, one naming the first clerk as a victim of aggravated robbery and the other naming the second clerk as a victim of aggravated robbery, was multiplicitous and therefore unconstitutional. We agree.

A multiplicitous information charges a single offense in several counts, and it violates the Fifth and Fourteenth Amendments' prohibition against double jeopardy because it creates the possibility that a defendant will receive more than one sentence for that single offense. *See People v. Heller*, 698 P.2d 1357 (Colo.App.1984), *rev'd on other grounds*, 712 P.2d 1023 (Colo.1986).

Despite a superficial similarity, *People v. Benton*, 829 P.2d 451 (Colo.App.1991), is not dispositive of the issue presented here. In *Benton*, the defendant was charged with and convicted of three counts of aggravated robbery of a restaurant. Two employees and one customer were named as the victims of the robbery. The court held that since the customer did not have the right of possession over the restaurant's money, the customer was not a "victim" of the robbery and reversed the defendant's conviction as to the customer. However, whether the other two counts naming the employees as victims were unconstitutionally multiplicitous was not raised. Thus, *Benton* is not particularly helpful.

This is an issue of first impression in Colorado. There is a split in the out-of-state authority as to whether a robbery that involves a theft from one person or entity, typically an employer, but also involves an assault on more than one person, is one robbery or several robberies.

Several jurisdictions take the position that only one robbery can be charged. *See United States v. Canty*, 469 F.2d 114 (D.C.Cir. 1972); *State v. Faatea*, 65 Haw. 156, 648 P.2d 197 (1982); *People v. Nicks*, 23 Ill.App.3d 435, 319 N.E.2d 531 (1974), *rev'd in part on other grounds*, 62 Ill.2d 350, 342 N.E.2d 360 (1976); *Allen v. State*, 428 N.E.2d 1237 (Ind. 1981); *State v. Potter*, 285 N.C. 238, 204 S.E.2d 649 (1974); *State v. Whipple*, 156

N.J.Super. 46, 383 A.2d 445 (1978); *State v. Perkins*, 45 Or.App. 91, 607 P.2d 1202 (1980); and *State v. Collins*, 174 W.Va. 767, 329 S.E.2d 839 (1984).

Other states reach the contrary conclusion. *See People v. Ramos*, 30 Cal.3d 553, 180 Cal.Rptr. 266, 639 P.2d 908 (1982), *rev'd on other grounds, California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983); *State v. Shoemake*, 228 Kan. 572, 618 P.2d 1201 (1980); *Commonwealth v. Levia*, 385 Mass. 345, 431 N.E.2d 928 (1982); *People v. Wakeford*, 418 Mich. 95, 341 N.W.2d 68 (1983); *State v. Johnson*, 499 S.W.2d 371 (Mo.1973). The question of multiplicity undoubtedly has double jeopardy implications. *State v. Ballard*, 280 N.C. 479, 186 S.E.2d 372 (1972).

The supreme court of West Virginia accurately summarized the issue by stating:

> It is sometimes argued that since each clerk or employee, through his employment, exercises constructive possession over his employer's property, a separate robbery conviction can be established for each employee present in the store or bank during a robbery. However, this theory has been rejected by most of the courts addressing the issue. The rationale commonly advanced by these courts is that because the property taken is owned by only one entity, i.e., the store or bank, there is only one larceny, and, therefore, only one robbery.

Characterizing the authority reaching the opposite conclusion, the same court stated:

> These courts failed to recognize that at common law, robbery was considered to be aggravated larceny. By allowing multiple robbery convictions when only one larceny was committed, these courts in effect altered the substantive definition of robbery as developed at common law without addressing their authority to do so.

*State v. Collins, supra*, 329 S.E.2d at 844–45.

In deciding whether the charges are multiplicitous, the courts in the cited cases have considered, among other relevant factors: (1) whether robbery is considered a crime against persons or a crime against property; (2) whether the statute calls for different punishments depending on the value of the property stolen; (3) whether the courts are empowered to impose concurrent sentences; and (4) whether the prosecution is otherwise empowered to charge other offenses as to other persons present during the criminal episode.

Applying those factors in Colorado we find that: (1) robbery and aggravated robbery are crimes against property; (2) the penalty varies not with the value of the property stolen but with the gravity of the assaultive behavior; (3) aggravated robbery is a crime of violence requiring consecutive sentencing when arising out of the same criminal episode, § 16–11–309, C.R.S.2000; *see People v. Beyer*, 793 P.2d 644 (Colo.App.1990), *disapproved on other grounds, Robles v. People*, 811 P.2d 804 (Colo.1991); and (4) the prosecution can charge other offenses, such as felony menacing, § 18–3–206, C.R.S.2000, with respect to other victims who were present during the robbery.

■ The gravamen of robbery in Colorado is the application of physical force or intimidation culminating in the taking of property from the victim's person or presence. *People v. Bartowsheski*, 661 P.2d 235 (Colo.1983); see also *State v. Faatea, supra*.

■ We conclude, primarily because consecutive sentences are mandatory, that disproportionate sentencing is a distinct possibility and that the information charging defendant with two counts of aggravated robbery based on the number of employees present and perhaps threatened during the theft of only the employer's property is multiplicitous and thus unconstitutional. Were we to reach the opposite conclusion, an armed robber who took the employer's money from one cash register in the presence of fifteen employees each having access or right of access to the cash register could be charged with fifteen counts of aggravated robbery and sentenced to fifteen consecutive sentences in the aggravated range.

Therefore, defendant's conviction and sentence as to Count 2 of the information, which designates the first clerk as the victim, cannot stand.

Having so held, we need not address defendant's other contentions regarding this offense.

## IV.

Defendant's final claim is that the trial court erred in not granting a mistrial when the investigating officer testified that the photographs used in the photographic lineup were drawn from the department computers, thus implying that defendant had a prior criminal record. We disagree.

A mistrial is a drastic remedy. *People v. Anderson,* 184 Colo. 32, 518 P.2d 828 (1974). A trial court has broad discretion in deciding whether to grant or deny a mistrial, and its decision will not be disturbed on appeal absent a gross abuse of discretion and resulting prejudice to a defendant. Moreover, the prejudice to a defendant must be so great that no remedy other than a mistrial suffices. *People v. Abbott,* 690 P.2d 1263 (Colo.1984).

Generally, evidence of an accused's prior criminal history is inadmissible to prove the crime charged. *See Hollis v. People,* 630 P.2d 68 (Colo.1981). To cure any potential misuse of this evidence by a jury, limiting instructions are usually required. *See People v. Garner,* 806 P.2d 366 (Colo. 1991).

The introduction of mug shots of the defendant may imply past criminal activity. *See People v. Thatcher,* 638 P.2d 760 (Colo. 1981). Consequently, mug shots are not a favored form of evidence, and their introduction at trial has been viewed with skepticism. *See People v. Bugarin,* 181 Colo. 62, 507 P.2d 875 (1973). However, the introduction of a mug shot at trial is not reversible error per se. *See generally People v. Abbott, supra; People v. Bugarin, supra.*

In determining whether the prejudicial effect of a mug shot substantially outweighs its probative value, courts consider a variety of factors. Generally, mug shots may be introduced if they are relevant to the identification of a defendant and are introduced for that limited purpose with a cautionary instruction. *See People v. Thatcher,*

*supra; People v. Goldsberry,* 181 Colo. 406, 509 P.2d 801 (1973).

Moreover, if the accompanying testimony does not imply that a defendant has a past criminal history, the introduction of a mug shot does not necessitate the granting of a mistrial. *See People v. Moore,* 841 P.2d 320 (Colo.App.1992); *People v. Borrego,* 668 P.2d 21 (Colo.App.1983); *cf. People v. Bugarin, supra.*

In this case, defendant's mug shot was included in a photographic lineup that was admitted into evidence for the purpose of identifying him as the robber. As in *People v. Moore, supra,* the testimony accompanying the introduction of the photographic lineup was brief and did not allude to any past criminal activity.

Defendant, nevertheless, points out that the jury could have assumed that his mug shot was taken while he was "booked" on a prior occasion for a prior crime. This possibility, in and of itself, does not rise to the level of actual prejudice, because it is just as likely that the jury assumed his mug shot was taken when he was "booked" for the crimes charged. Moreover, following defendant's request for a mistrial, the trial court instructed the jury to disregard any inferences of past criminal activity that could be drawn from the origin of defendant's mug shot.

Accordingly, defendant's conviction and sentence for aggravated robbery as to the first clerk arising out of the first robbery is reversed. In all other respects, the judgment and sentences are affirmed.

RULAND, J., concurs.

NIETO, J., concurs in part and dissents in part.

Judge NIETO concurring in part and dissenting in part.

I respectfully dissent from the majority's conclusion in part III. In all other respects, I concur.

In part III, the majority concludes that the information charging two counts of aggravated robbery, both arising out of the incident

on September 13, 1997, was unconstitutionally multiplicitous, and thus violated the constitutional prohibition against double jeopardy. I disagree with this conclusion.

### I.

Multiplicity is the charging of the same offense in multiple counts. Such a practice violates the prohibition against double jeopardy because it results in multiple punishments for the same act. However, several counts arising from a single transaction are not multiplicitous if each count is a distinct offense requiring proof of different elements. *People v. Heller*, 698 P.2d 1357 (Colo.App. 1984), *rev'd on other grounds*, 712 P.2d 1023 (Colo.1986). If each count requires proof of a separate and distinct victim, then each count requires proof of a different element. *People v. Wieckert*, 191 Colo. 511, 554 P.2d 688 (1976), *overruled on other grounds, Villafranca v. People*, 194 Colo. 472, 573 P.2d 540 (1978). In *Wieckert*, the defendant fired several gun shots at a group of people, and he was convicted of four separate offenses arising from this single incident. The supreme court held:

> A defendant who commits an act of violence with the intent to place more than one person in fear of serious bodily injury or who recklessly creates a substantial risk of bodily injury to more than one person may be found guilty of multiple offenses under the same criminal statute. Moreover, this court has adhered to the traditional test for defining whether the same act or transaction constitutes multiple distinct crimes: "[T]he test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not."

*People v. Wieckert, supra*, 191 Colo. at 514, 554 P.2d at 690 (quoting *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

Therefore, if the separate robbery counts arise from the same transaction, but each requires proof of a different element, *i.e.*, a separate victim, they are distinct offenses and are not multiplicitous. "[W]hen multiple convictions arise from crimes committed upon different victims, the evidence is not identical." *People v. Grant*, 30 P.3d 667 (Colo.App.2000). Here, in the first robbery, money was taken from the presence of two victims. Therefore, each count was supported by proof of a different element, *i.e.*, the identity of the victim. Therefore, the separate sentences on each count did not constitute multiple punishment for the same conduct. *See People v. Montanez*, 944 P.2d 529 (Colo.App.1996), *rev'd on other grounds*, 966 P.2d 1035 (Colo.1998); *see also* Annot., *Single Act Affecting Multiple Victims as Constituting Multiple Assaults or Homicides*, 8 A.L.R.4th 960 (1981)(many courts have found a single gunshot to support separate crimes against each person affected).

### II.

The crux of the majority's analysis is their conclusion that only one robbery can be committed if there is only one taking of property from a single entity. This analysis necessarily turns on the conclusion that robbery is a crime against property. The majority references three other factors in their analysis, but the analysis of the issue in the line of cases they rely on is nonetheless dependent on the view that robbery is an aggravated form of theft and thus, a crime against property. The other factors merely serve to explain the conclusion that the gravamen of robbery is the taking of property from another. When the robbery statutes are viewed from this perspective, the ownership of the property that was taken becomes the focus of the inquiry, and this leads to the conclusion that, if there was only one taking, there can be only one robbery.

The contrary line of authority cited by the majority concludes that robbery is a crime against a person. These cases consider robbery to be an assaultive crime and therefore focus the inquiry on the persons from whom the property was taken. This focus leads to a conclusion that multiple robberies are committed if the force used to effect the taking is directed toward multiple victims, each of whom has some control over the property.

Statutes are to be construed and applied to give effect to the intent of the General As-

sembly. *State v. Nieto*, 993 P.2d 493 (Colo. 2000). One factor that indicates the intent of the General Assembly is the wrong the statute is intended to prohibit and punish. *See Civil Service Commission v. Pinder*, 812 P.2d 645, 648 (Colo.1991)(A "primary task in interpreting a statute is to give it a construction and interpretation that will render it effective in accomplishing the purpose for which it was enacted."); *see also Hoffman v. Hoffman*, 872 P.2d 1367, 1369 (Colo.App.1994)(Statutory interpretation requires the court to consider factors "such as the nature of the problem addressed by the legislation."). The distinction between a crime against persons and a crime against property is important because it determines which prohibited act is the evil the statute seeks to prohibit and punish, *i.e.*, the gravamen of the statute.

The supreme court has twice stated the gravamen of Colorado's robbery statutes:

> The kind and value of property taken in a robbery prosecution is immaterial. The gravamen of the offense is the manner of the taking.

*People v. Marquez*, 692 P.2d 1089, 1097 (Colo.1984) (citation omitted).

> The gravamen of robbery is the application of physical force or intimidation against the victim at any time during the course of a transaction culminating in the taking of property from the victim's person or presence.

*People v. Bartowsheski*, 661 P.2d 235, 244 (Colo.1983).

Thus, the robbery statutes, §§ 18–4–301 and 18–4–302, C.R.S.2000, seek to protect victims from the threats and violence associated with the manner of taking. In contrast, wrongs related to the value of the property taken are addressed in the theft statute, § 18–4–401, C.R.S.2000. In my view, the supreme court's holdings in *Bartowsheski* and *Marquez* lead to the conclusion that robbery and aggravated robbery are crimes against persons.

As the majority points out, the robbery statutes, §§ 18–4–301 and 18–4–302, are codified in an article entitled "Offenses Against Property," but that title is not conclusive.

*See Cooper v. First Interstate Bank*, 756 P.2d 1017 (Colo.App.1988). The statutes enacted by the General Assembly are arranged into titles, articles, and sections by the revisor of statutes. Section 2–5–101, C.R.S.2000. The arrangement of titles and articles and the section headings are not part of the legislative text, and "no implication or presumption of a legislative construction is to be drawn therefrom." Section 2–5–113(4), C.R.S.2000; *but see Cooper v. First Interstate Bank, supra* (holding that the title of a statute may be used as an aid in construing the statute, but it is not dispositive).

Accordingly, since the purpose of the robbery statutes is to protect persons, multiple crimes are committed if multiple persons are victimized in a single transaction. This view of the robbery statutes does not make them so broad that a prosecutor has unfettered discretion to include as a victim everyone who happens to be in the vicinity when a robbery occurs. The statutes define and limit who can be considered the victim of a robbery.

One of the elements of aggravated robbery is that something of value must be taken from "the person or presence of another." Sections 18–4–301 and 18–4–302. The term "presence of another," as used in the robbery statutes, is defined as follows:

> [P]roperty is taken from the "presence of another" when it is so within the victim's reach, inspection or observation that he or she would be able to retain control over the property but for the force, threats, or intimidation directed by the perpetrator against the victim.

*People v. Bartowsheski, supra*, 661 P.2d at 244. The term is further limited by the requirement that the person from whose presence the property is taken "must be exercising, or have the right to exercise, control over the article taken." *People v. Benton*, 829 P.2d 451, 453 (Colo.App.1991).

This construction of the statutes gives further assurance that separate evidence will be required to support each count because each victim's control or right to control the property taken will depend on evidence that relates to that victim.

III.

The majority also concludes "that disproportionate sentencing is a distinct possibility" because consecutive sentences are mandatory in this case where defendant was convicted of two crimes of violence arising out of the same incident. *See* § 16–11–309(1)(a), C.R.S.2000; *People v. Martinez,* 1 P.3d 192 (Colo.App. 1999). However, § 16–11–309(1)(a) also provides a means for the sentencing court to modify sentences for violent crimes in unusual and extenuating circumstances. Although the modified sentences still must be served consecutively, the sentences may be modified below the statutory range and may even include a probationary sentence if the defendant is otherwise eligible. *People v. Byrum,* 784 P.2d 817 (Colo.App.1989). This provision allows the sentencing court great latitude to modify sentences if the circumstances justify it. Therefore, I conclude that the violent crime statute allows the sentencing court sufficient discretion to modify the mandatory sentencing so that disproportionate sentences may be avoided.

Accordingly, I would affirm the judgment and sentence on all the counts of aggravated robbery.